[Civ. No. 15249.   Second Dist., Div. One.   Aug. 31, 1946.]

R. N. BELL, Appellant, v. C. A. LOVETT et al., Respondents.

Louis Ballenger for Appellant.

Austin Clapp, William B. Wetherall and Cecil F. Poole, as Amici Curiae on behalf of Appellant.

H. E. Bianchi for Respondent.

YORK, P. J.—This is an action to recover money paid by plaintiff, as lessee, to defendants, as lessors, alleged to have been in excess of the maximum monthly rental payments permitted by the Office of Price Administration.

Plaintiff prosecutes this appeal from an adverse judgment based upon a ruling of the trial court sustaining defendants' objection to the introduction of any further evidence ''on the ground there is no cause of action on behalf of the plaintiff, that it is clearly shown here that the moneys were paid, were not rent, but were consideration for a change in the terms of the lease.''

On September 26, 1940, respondent C. A. Lovett, who with his wife, Agnes L. Lovett, owned the Glendale Motor Hotel,

leased the same by written agreement to Violet C. Hossack and Maude Wells for a term of five years from October 1, 1940, for a total consideration of $12,000, payable in monthly installments of $200 each. The sum of $3,200 was paid in advance upon the execution of the lease and was for the first month and the last 15 months of the term.

Under paragraph VI of the lease, the lessee had an option to lease the property for an additional five-year term upon expiration of the original term; and by paragraph VII of the lease, the lessor had the right to sell the property during the term of the lease, free thereof.

On January 16, 1941, the original lessees assigned their interest in the lease to appellant, to which respondents consented in writing. On May 3, 1944, appellant and respondents executed a modification of paragraphs VI and VII of said lease by which it was agreed that lessee should relinquish his right to exercise the option provided by paragraph VI ''beyond the 30th day of September, 1945''; and that the lessor and his wife ''hereby relinquish their right to sell said premises free and clear of said lease prior to the expiration of the lease, being the 30th day of September, 1945.''

After reciting *in haec verba* the lease, assignment and modification, hereinbefore referred to, the first amended complaint alleged as follows:

''V. That on the 1st day of March, 1942, the rent for the aforementioned housing accommodations was the sum of $200 per month; that subsequent to the 1st day of March, 1943, and prior to the 1st day of October, 1943, the rent for said accommodations was increased to the sum of $250.00 per month.

''VI. That on the first day of November, 1942, pursuant to the provisions of the Emergency Price Control Act of January, 1942, as amended, there became in effect in Los Angeles County, State of California, Maximum Rent Regulation Number 53, being docket number 6084, as issued by the Office of Price Administration; that by reason and operation of the provisions of said regulation, the maximum legal rent for the aforesaid housing accommodations on and after the 1st day of November, 1942, became and thereafter was the sum of $200.00.

''VII. That the property mentioned in the lease aforesaid comes under the provisions of maximum rent regulations established by the Office of Price Administration in that the

said premises contained less than 25 rented rooms, to-wit, 10 rooms.

"VIII. That on or about the 1st day of October, 1943, the defendants demanded of the plaintiff the sum of $250.00 as rent for said housing accommodations for the rental period from October 1, 1943, to November 1, 1943; that on or about the 1st day of October, 1943, plaintiff paid the sum of $250.00 demanded as aforesaid, and said demand and payment exceeded the legal rent for said housing accommodations for said period by the sum of $50.00.

"IX. That by reason and virtue of the premises, plaintiff is bringing this action for $50.00 under the provisions of section 205(e) of the Public Law 421 of the 2nd Session of the 77th Congress of the United States, known as the Emergency Price Control Act of 1943, approved January 30, 1942, as amended."

Plaintiff then alleged 25 additional causes of action for $50 each, or an aggregate of $1,200, and prayed for a judgment treble that amount, or $3,600.

As to the allegations of paragraphs V, VI, VII and VIII of the first amended complaint hereinabove quoted, the court found as follows:

"IV. That the allegations set forth in Paragraph V are not true. The court finds that the rental rate at all times during the occupancy by the plaintiff was the same as is set forth in the original lease agreement entered into between the defendant, C. A. Lovett, and Violet Hossack and Maude Wells.

"V. That the allegations set forth in Paragraph VI of the plaintiff's complaint are not true. The court finds that on November 1st, 1942, and thereafter the maximum rental rate for said premises involved in this action pursuant to the provisions of the Emergency Price Control Act of 1942 as amended was the rental rate provided for by said lease referred to in Paragraph I hereinabove, on the maximum rent date fixed by the Act, to-wit: March 1st, 1942.

"VI. That the allegations set forth in Paragraph VII of plaintiff's first amended complaint are true. That all of the ten (10) rooms involved in said lease with the exception of one (1) were sublet to the general public by plaintiff. That plaintiff was not the ultimate consumer of said premises other than one (1) room. The court finds from the oral evidence offered by the plaintiff that all of the allegations set forth

in Paragraph VIII page 11 of plaintiff's first amended complaint are not true. That there was no agreement between the plaintiff and the defendants or either of them for any increase in rent. That the sum of Fifty ($50.00) Dollars paid to the defendant, C. A. Lovett, was paid solely in consideration of the defendants undertaking and agreeing not to sell said property during the period beginning October 1st, 1943, to and including November 1st, 1943, and the waiver of the defendants' right to sell said property and recover possession thereof upon return of rents prepaid by the plaintiff's assignors. This right was reserved to defendants in the lease prior to the effective date of the Emergency Price Control Act. That the defendants did not demand or receive any rent for the use or occupancy of said premises on or after the effective date of the price regulation in excess of the maximum rent collectable thereunder, nor did said defendants or either of them offer, solicit, attempt or agree to violate any provision of said regulation."

The court also found: "That the lease agreement set forth in Paragraph II of plaintiff's first amended complaint was entered into between the parties therein named as alleged. That lessees, Violet C. Hossack and Maude Wells, by assignment did transfer their interest to the plaintiff who did not assume performance of the terms or conditions thereof. That the plaintiff at the time of and as a condition to the acceptance of said assignment did secure from the defendants herein a waiver of the defendants' rights to sell said property described in the lease, which waiver was effective to the first day of August, 1941. That there was paid to the defendant, C. A. Lovett, as consideration for said waiver, the sum of Two Hundred Dollars ($200.00) which payment was slightly less than Fifty Dollars ($50.00) for each month during which the waiver was effective."

The lease and the assignment thereof were executed on September 26, 1940, and January 16, 1941, respectively, and prior to the effective date of the rental regulations as fixed by the Emergency Price Control Act, to wit: March 1, 1942. On the date of the execution of the assignment, appellant paid $200 to respondents for a waiver effective to August 1, 1941, of the latter's right to sell the property covered by the lease.

Appellant testified that on September 6, 1943, respondent C. A. Lovett "came to my place and asked me if I would be

willing to sign a statement to vacate the property January 1, 1944, if he wouldn't sell it in the meantime. . . . I told him I would have to study the matter over. . . . He came back (on September 13) and asked me if I was going to agree to sign this statement, which I told him that I would not and he left and said 'then I am going to sell it.' . . . On or about the 17th day of September . . . 1943 . . . Mr. Lovett drove into the place accompanied by a man and a woman and he drove to the rear. The man and the woman got out of the car and came to the front and I went to the rear where Mr. Lovett was in his car. . . . I asked Mr. Lovett, having seen an advertisement in the paper of the sale of the place, . . . if we could not work out some way where I could buy the place and he stated that he wanted $28,000.00, $20,000.00 down and carry the $8,000.00 himself. So I told him I couldn't make that payment. So he stated that he didn't particularly want to sell the place now and if I would agree to pay him $50.00 more a month rent he would let me stay in the place until the war ended with Germany and then we went to the front, went to the office, and Mr. Lovett wrote on a piece of paper $250.00 a month until the war with Germany ended; and I asked him then inasmuch as he could not build if he wouldn't extend the time until six months after the government released building material. To which he agreed. . . . I mailed him the first check on September 22, 1943 . . . $250.00. . . . this amount of money was paid each month thereafter . . . until May 3, 1944.'' The witness then testified that early in December Mr. Lovett told him he could get $30,000 for the place and intended to sell it, whereupon the witness told Lovett that he had agreed not to sell the place until after the war with Germany if the witness paid him $50.00 a month, to which Mr. Lovett replied that he did not have that agreement in writing. On April 20, 1944, appellant had another conversation with respondent Lovett at which time the latter said ''if I could scratch section six of the lease he would scratch section seven and we would initial it, in that way it would give him a chance to sell and give possession after my lease expired. . . . I told him I would have to study the matter over but in that event we would have to have a rider covering our agreement because I would not scratch anything. . . . On the 21st of April, 1944 . . . I told Mr. Lovett that I agreed to accept his proposition and that I would make arrangements with the attorney to prepare the rider . . . I told him that I would agree, I told

him I would pay the entire amount, rent, $250.00 for May and June, and $750.00 the last fifteen months of the lease, a total of $1,250.00. And I made an appointment. . . . The Court: Before you proceed further, Mr. Bell, about six questions back you gave an answer—— I think I heard you, but I am not sure—— I understood you to say, and I want to be sure that I am right, that at the time this 3 for identification was written in that conversation that you were to pay $50.00 additional a month in order that Mr. Lovett would not sell the property, what was it you said in that regard. I want to get that clear. What was said on that subject? The Witness: I don't believe I answered that question directly that way. The Court: No, you didn't answer it directly, there was an implication in your answer that that was what was was being discussed. Now, what was said at that time? The Witness: Well, I had agreed to pay him the $50.00 extra a month rent if he did not sell the property. It wasn't to keep him from not selling it because I couldn't keep him from selling it, he had a right to sell it." Thereafter, appellant recounted a meeting in Mr. Ballenger's law office when a document introduced in evidence as Exhibit 5 was prepared and signed by respondents. This is the document modifying the lease, dated May 3, 1944, hereinbefore mentioned. At the same time, appellant's check for $1,250 was handed to respondents. On cross-examination, said witness testified "I was paying the money, yes, so that I might remain there. . . . That is the object of the matter that I could remain there, I didn't want to get out. . . . I was after security . . . And I had no security" until the provisions authorizing respondent to sell were removed from the lease.

Thereafter, the trial court sustained respondents' objection to the introduction of further evidence and found (Finding VI) that "the defendants did not demand or receive any rent for the use or occupancy of said premises on or after the effective date of the price regulation in excess of the maximum rent collectable thereunder, nor did said defendants or either of them offer, solicit, attempt or agree to violate any provision of said regulation."

It is stated by appellant in his opening brief that "Without close analysis of the testimony it may be conceded that much of it warrants the inference that the raise from $200 to $250 in the monthly payments was in consideration and upon the understanding that the terms in the lease were al-

tered so that the tenant was assured of remaining in possession until the expiration of the term of the lease, which resulted from the waiver by Lovett of his right to sell and oust Bell. Yet other testimony given by the plaintiff clearly indicates that the additional $50.00 paid each month was agreed to represent a raise in the rent. However . . . all payments by the tenant to the landlord 'in connection with' the 'use and occupancy' of 'housing accommodations' are, in the eyes of the Office of Price Administration, and by virtue of its regulations and opinions, rent payments; and it is declared in Section 2(a) of Rent Regulations for Housing,

" 'Regardless of any contract, agreement, lease or other obligation heretofore or hereafter entered into, no person shall demand or receive any rent for or in connection with the use or occupancy on and after the effective date of regulation of any housing accommodations . . . higher than the maximum rents provided by this regulation.' "

The modification agreement of May 3, 1944, in which appellant relinquished his right to exercise his option to rent the property for a further period beyond the termination of the lease, and respondents relinquished their right to sell the property free of the lease during the remaining term thereof, also provided that "All the other terms and conditions of the said lease shall continue to remain in full force and effect except as herein modified." In other words, the rent payable under the lease remained at $200 per month.

It is obvious from the foregoing that the testimony of appellant is amply sufficient to support an inference that the sum of $50 per month, here complained of, was paid as consideration for the waiver by respondents of their right to sell the property and oust appellant from possession thereof during the remaining term of the lease, as evidenced by the modification agreement; and which right was reserved to respondents in the lease prior to the effective date of the Emergency Price Control Act.

The judgment is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied September 20, 1946, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1946.