[L. A. No. 19991. In Bank. Apr. 29, 1947.]

CLYDE A. LOVETT et al., Respondents, v. R. H. BELL et al., Appellants.

Louis Ballenger for Appellants.

Austin Clapp, William B. Wetherall and Cecil F. Poole, as Counsel for Office of Price Administration, as Amicus Curiae on behalf of Appellants.

Henry E. Bianchi for Respondents.

SPENCE, J.—This is an appeal by defendants from a judgment of eviction and damages for withholding entered in an unlawful detainer action brought after the expiration of the lease between the parties litigant. The Price Administrator has filed a brief as amicus curiae in support of defendants' claim that the judgment must be reversed because it contravenes the Emergency Price Control Act of 1942, as amended (56 Stats. 23, 50 U.S.C.A., App., § 901 et seq.) and the Rent Regulation for Housing (8 F.R. 7322) promulgated thereunder. The record sustains that position.

There is no dispute as to the facts. Defendants had gone into possession of a motor hotel in Glendale, an entire structure containing twelve units and owned by plaintiffs, under a written lease covering a five-year period ending September 30, 1945. Defendants occupied two units as living accommodations. On May 3, 1944, a written modification of the lease was executed between the parties, by the terms of which plain-

tiffs relinquished "their right to sell said premises free and clear of said lease prior to the expiration" thereof and defendants relinquished an option they had to renew the lease and "any interest in said leased premises above described after the 30th day of September, 1945." On September 25, 1945, defendants forwarded to plaintiffs a check for $200, the monthly rent required by the terms of the lease, "for the calendar month October, 1945," and in the accompanying letter defendants stated that "every effort" was being made "to get into another place as soon as possible," surely "before the first of January, 1946." Plaintiffs promptly returned the check with the declaration that defendants' continued occupancy of the premises after September 30, 1945, would result in eviction proceedings. Thereafter, and on October 11, 1945, without complying with the provisions of the Rent Regulation for Housing prescribed by the Office of Price Administration under authority of the Emergency Price Control Act, plaintiffs filed their complaint for unlawful detainer. Following a trial, findings of fact and conclusions of law were made in favor of plaintiffs upon the theory that by virtue of the parties' agreement of May 3, 1944, defendants relinquished all right to remain upon the premises after the expiration of their lease; that therefore, while the premises were situate within a defense rental area, no relationship of landlord and tenant existed after the termination date of September 30, 1945; and consequently, the rent director of the O.P.A. had no jurisdiction over the matter in litigation. Judgment was entered accordingly on November 20, 1945.

Section 6(a) of the Rent Regulation for Housing restricts the removal of tenants as follows: *"So long as the tenant continues to pay the rent to which the landlord is entitled,* no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that *such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into* which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, unless . . ." (Emphasis added.)

(Then follows six paragraphs giving the class of cases where dispossession may take place, which conditions have no pertinency to this controversy.)

 Plaintiffs argue that the modification agreement of May 3, 1944, whereby defendants relinquished their "interest in said leased premises . . . after the 30th day of September, 1945," constituted a "waiver" of defendants' right to continued occupancy of the property after the expiration of the lease and defendants therefore cannot invoke the protection of section 6(a) as the basis for refusing to surrender possession. But such argument cannot prevail to defendants' prejudice in the assertion of their tenancy claim as contemplated by the act and Rent Regulation thereunder. Among other purposes, the act as a war measure was designed to "eliminate and prevent . . . disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; . . ." (50 U.S.C.A., App., § 901.) Section 2(g) of the act provides that "regulations, orders and requirements under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof." (50 U.S.C.A., App., § 902(g).) In line with this expression of policy, section 1(d) of the Rent Regulation declares that "an agreement by the tenant to waive the benefit of any provision of this regulation is void." Such prohibition recognizes the restricted supply of housing accommodations available during the designated period of national emergency and protects the tenant from the enforcement of exactions obtained by the landlord at variance with the rent control program. (*Siegel* v. *Bowers*, 185 Misc. 684 [58 N.Y.S.2d 187, 189]; see, also, *Zwang* v. *A. & P. Food Stores*, 181 Misc. 375 [46 N.Y.S.2d 747]; *Schaubach* v. *Anderson*, 184 Va. 795 [36 S.E.2d 539]; *Schaffer* v. *Leimberg*, 318 Mass. 396 [62 N.E.2d 193]; *Porter* v. *Crawford & Doherty Foundry Co.*, 154 F.2d 431, cert. den. 329 U.S. —— [67 S.Ct. 53, 91 L.Ed. ——].)

At the time the modification agreement was executed, defendants indisputably were tenants of plaintiffs. That agreement gave defendants "security" in their occupancy of the premises for the full term of the lease, consistent with plaintiffs' relinquishment of their right to sell the property and oust defendants from possession thereof prior to the designated termination date. As a part of that agreement defen-

dants paid plaintiffs the sum of $1,250. In a dispute between the parties as to whether such sum represented "a raise in the rent" in violation of the operative Rent Regulation, the additional payment was sustained as "consideration for a change in the terms of the lease" so as to give defendants the unmolested tenancy they sought. (*Bell* v. *Lovett,* 75 Cal.App.2d 883 [171 P.2d 758].) Now here plaintiffs claim that defendants' relinquishment of their "interest in [the] leased premises . . . after the 30th day of September, 1945," also entered as "a part of the consideration" for the alteration of the lease and should be construed as an "absolute surrender" of all right to possession upon the stated date. But accepting plaintiffs' views as to the purport of the parties' understanding in effecting the modification of the lease, a "waiver" of the benefits of the Rent Regulation "is void." (§ 1(d).) Manifestly, within such classification and therefore unenforceable is an agreement by a tenant to relinquish the right to resist eviction under the provisions of section 6(a) of the Rent Regulation.

Plaintiffs cite as "in point" here the case of *Bowles* v. *Strano,* 62 F.Supp. 9, but that decision turned on an entirely different factual situation. The parties there were *vendors* and *vendees,* and it was agreed between them that the vendors might remain in possession of the property for one month following the consummation of the sale. Upon the vendors' failure to vacate the premises at the stipulated time, the vendees instituted an action in ejectment in the state court under local law. Price Administrator Bowles then sought in the federal court an injunction to restrain the ejectment proceedings. The injunction was refused on two grounds: (1) the *vendor-vendee relationship* of the parties brought the agreement without the jurisdiction and control of the O.P.A. or of the Area Rent Director; and (2) the *equitable powers* of the court would not be used to aid in violation of the agreement where it appeared that no interest of the United States was adversely affected. But here the parties stand in the controlling *landlord-tenant relationship,* so that their agreement for modification of the lease comes precisely within the scope of the Rent Regulation; and the unlawful detainer proceeding instituted by plaintiffs for the enforcement of their eviction claim is an *action at law,* requiring strict compliance with all conditions precedent to its maintenance in recognition of the interest of the United States in effectuating the

entire national rent control program. As so distinguished the reasoning of the *Bowles* v. *Strano* case has no application here. (See *Porter* v. *Dicken,* 328 U.S. 252 [66 S.Ct. 1094, 90 L.Ed. 1203] ; *Porter* v. *Lee,* 328 U.S. 246 [66 S.Ct. 1096, 90 L.Ed. 1199].)

Upon the undisputed facts, the rights and obligations of the parties stemming from their *landlord-tenant relationship* continued after the expiration of the lease. The Rent Regulation defines "housing accommodations" to mean "any building, structure, or part thereof . . . rented or offered for rent for living or dwelling purposes." (§ 13(a) (6).) It also defines "landlord" to include "an owner . . . or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations"; and it defines "tenant" to include any person "entitled to the possession or to the use or occupancy of any housing accommodations." (§ 13(a) (8) and (9).) The chief consideration under these definitions seems to be the character of the initial occupancy of the property as housing accommodation. If the occupant originally took lawful possession of the premises as a tenant, he remains such for the purposes of the Rent Regulation no matter what change in ownership occurs and regardless of whether under local law he is technically a "tenant." (*Pfalzgraf* v. *Voso,* 184 Misc. 575 [55 N.Y.S.2d 171, 173].) For example, a purchaser of rental property at a lien foreclosure sale may not oust a tenant in possession except in pursuance of the Rent Regulation specifying the grounds for eviction. (*Long Branch Banking Co.* v. *Howland,* 133 N.J.Eq. 315 [32 A.2d 860] ; *Home Savings Bank* v. *Hunter,* 180 Misc. 1 [42 N.Y.S.2d 557] ; *Edison Savings & Loan Association* v. *Stamberger,* 184 Misc. 53 [53 N.Y.S.2d 578].) Nor is it of any significance in the cited cases that the dispossession attempt was made with respect to a single family dwelling while here defendants use but two of the twelve units for their own housing accommodation and the balance of the motel is rented for business purposes. The Rent Regulation for Housing applies to "entire structures or premises wherein 25 or less rooms are rented or offered for rent by any lessee, sublessee or other tenant of such entire structure or premises, whether or not used by the lessee, sublessee or other tenant as a hotel or rooming house." (§ 1(b) (4); *United States Trust Co.* v. *Schaeffer,* 185 Misc. 148 [55 N.Y.S.2d 886, 887].) Here defendants were lawfully in possession of the property

at the expiration of the lease; and section 6(a) specifically applies in restricting their removal after such termination date "so long as" they continue "to pay the rent to which the landlord is entitled" and "regardless of any contract, lease, agreement or obligation . . . entered into which . . . otherwise provides."

Plaintiffs finally argue that an avoidance of defendants' promise to relinquish their "interest" in the leased premises after the termination date of the lease would permit defendants to profit "by their own fraud and breach of contract"; that defendants should therefore be estopped from now taking a position contrary to the import of their so-called "waiver" in the modification agreement on which plaintiffs confidently relied and acted. (Civ. Code, §§ 1589, 3521; *Estate of Bruce,* 27 Cal.App.2d 44 [80 P.2d 82]; *Harlan* v. *Harlan,* 70 Cal.App.2d 657 [161 P.2d 490].) But such argument cannot affect the determination of the jurisdictional question as to the application of the Rent Regulation in furtherance of sound public policy as declared by the act. Within its scope the act is the supreme law of the land (U. S. Const., art. VI, § 2; *Case* v. *Bowles,* 327 U.S. 92 [66 S.Ct. 438, 90 L.Ed. 552]) and supersedes state statutes which are inconsistent with its purpose. (50 U.S.C.A., App., §§ 204(d), 924(d); 50 U.S.C.A., App., §§ 305, 945; *Miller* v. *Municipal Court,* 22 Cal.2d 818 [142 P.2d 297].) It was said on this point in *Zwang* v. *A. & P. Food Stores, supra,* 46 N.Y.S. 2d 747, at page 749: "Congress alone is the judge of the economic soundness, the fairness, and the necessity of this important emergency measure. With those considerations the courts have no concern. Having the power to enact the legislation, the Congress likewise had the power to determine how it should be most effectively enforced." As part of the over-all national program to preserve the economic security of the country during the emergency period, the act envisages, among other things, the regulation of rentals and the control of the eviction of tenants in congested defense areas where housing accommodations would be at a premium. In furtherance of such avowed purpose the Rent Regulation to be administered by the O.P.A. establishes the procedure to be followed as a means of adjusting the conflicting interests of landlords and tenants, and, as part of such effective administration, declares that a tenant's "waiver" of the benefits of such Rent Regulation shall be "void." Such provision rec-

ognizes the unequal bargaining power of the parties in contracting with respect to the limited supply of housing accommodations and protects a tenant from unreasonable and inflationary demands which might be inserted in leases contrary to the express purpose of the act and in circumvention thereof. There is nothing unique about the obviation of the effect of contracts which contravene the avowed purpose of Congress to protect certain groups of society; as, for instance, illustrated by cases involving the Fair Labor Standards Act of 1938. (*Brooklyn Savings Bank* v. *O'Neil*, 324 U.S. 697 [65 S.Ct. 895, 89 L.Ed. 1296]; *D. A. Schulte, Inc.* v. *Gangi*, 328 U.S. 108 [66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208].) ■ Accordingly, defendants' so-called "waiver" of the right to resist eviction of the premises as authorized by the Rent Regulation cannot be enforced because it is an exaction contrary to the interests of the United States as declared by the act. To hold otherwise would enable a landlord to effectuate an eviction claim by a method which he could not otherwise urge because of the "restrictions on the removal of tenants" as promulgated by the Rent Regulation. (*Matkowsky* v. *Katz*, 184 Misc. 60 [53 N.Y.S.2d 430].)

Since defendants remained tenants within the intendment of section 6(a) of the Rent Regulation and are entitled to rely thereon, unaffected in such status either by the expiration of the lease or the inoperative "waiver," plaintiffs' eviction claim in challenge of the jurisdiction of the Area Rent Director of the O.P.A. cannot prevail. (*Bauer* v. *Neuzil*, 66 Cal.App. Supp.2d 1020, 1025 [152 P.2d 47].)

The judgment is reversed.

Gibson, C. J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent.

The controlling issues in this case are res judicata. (*Bell* v. *Lovett* (1946), 75 Cal.App.2d 883 [171 P.2d 758].) The decision in the earlier litigation at least impliedly (and, on the facts, conclusively) determines that the premises involved are not "housing accommodations" within the meaning of the Emergency Price Control Act of 1942, as amended (56 Stats. 23, 50 U.S.C.A.) and the Rent Regulation for Housing (8 F.R. 7322) promulgated thereunder, and adjudges valid the agreement of May 3, 1944, whereby the defendants herein relinquished all right to occupy and operate the prem-

16

ises subsequent to September 30, 1945. The majority opinion errs in disregarding the previously and finally adjudicated facts. It cannot reach its results without disregarding those facts and the law of res judicata.

The Rent Regulation (§ 13(9) (6)) defines "housing accommodations" to mean "any building, structure, or part thereof . . . rented or offered for rent for living or dwelling purposes." It is obvious here that as between plaintiffs and defendants the premises in question were *not* "rented or offered for rent *for living or dwelling purposes.*" The premises were an entire "motor hotel" of twelve units owned by plaintiffs. The lease to defendants (or their predecessors) was not for "housing accommodations" for them but as a business enterprise to be operated for profit. In the prior litigation the court expressly found that "all of the . . . rooms involved in said lease with the exception of one (1) were sublet to the general public by plaintiff [R. H. Bell, defendant here]. That plaintiff [R. H. Bell, defendant here] was not the ultimate consumer of said premises other than one (1) room." (*Bell* v. *Lovett* (1946), *supra*, 75 Cal.App.2d 883, 885 [171 P.2d 758].) The controversy, therefore, does not concern the right of a tenant or occupant of a family dwelling to remain in possession of his living quarters after the expiration of the rental term but involves a wilful holding over in the operation of a business for profit after the relinquishment, for a valuable consideration, of all right therein.

In 1940, the property to be operated as a business enterprise, was leased by plaintiffs to defendants' predecessors for a term expiring September 30, 1945, and with an option to the lessees to renew the term for an additional five years. The lease, however, reserved to plaintiffs "the right . . . to sell the said premises at any time during the term of this lease" and upon such sale to terminate the lessees' rights and occupancy. In 1944, for valuable considerations, the lease was modified. The lessors (plaintiffs) did "relinquish their right to sell said premises free and clear of said lease prior to the expiration of said lease" and the defendant R. H. Bell (who had acquired the lessees' rights) agreed that he did "relinquish his right to the exercising of an option beyond the 30th day of September, 1945, and . . . give up all rights to said option and *will not have any interest in said leased premises* . . . after the 30th day of September, 1945." (Italics added.) The plaintiffs fully performed their part of the con-

tract but the defendants, notwithstanding their own covenant, and notwithstanding that they had received such full performance from plaintiffs, refused on and after September 30, 1945, to surrender possession of the premises or any part thereof. The complexion of the whole matter might have appeared different to the trial judge if the defendants had surrendered to plaintiffs possession of the entire business property reserving only a claim of right to continue in personal occupancy of a single unit as a ''housing accommodation.'' Their refusal to surrender possession, it appears however, was not related to a single unit or to any housing shortage or ''housing accommodation'' but was found by the court to be ''deliberate, intentional, wilful and with knowledge that all of defendants' rights therein and their right to possession had terminated, and with knowledge that they were holding over against the will of the plaintiffs.'' The court further found ''that from and after the 30th day of September, 1945, no relationship of landlord and tenant has existed between the plaintiffs and defendants, and that the Rent Director of the Office of Price Administration has no jurisdiction over the subject matter herein.''

The last mentioned finding undoubtedly has reference to the fact that the property involved is not a mere residential or ''housing accommodation'' holding of the defendants but is a business holding. That is to say, the property, as hereinabove indicated, is a ''motor hotel'' which is occupied by the defendants not primarily for residence purposes but mainly for purposes of business operation in the subletting of hotel units to the general public. As expressly found by the court, ''Said premises were at all times . . . improved by a motor hotel, the units of which were rented to the public on a daily and weekly basis by the defendants herein.'' It was also found ''That the defendant . . . as alleged in plaintiffs' complaint did relinquish and surrender and abandon to the plaintiffs any and all right . . . to enjoy and remain in possession of the said premises . . . from and after the 30th day of September, 1945'' and that ''the defendants . . . do not have any interest therein nor the right to the possession thereof nor the right to possession of any part thereof.'' As aptly declared by Mr. Presiding Justice Moore in the opinion of the District Court of Appeal in this case, ''If a total renunciation of interest in the property be not the fact established by the language of the agreement then the art and custom

of reducing to writing the understandings of men might as well be cast into the discard." (*Lovett* v. *Bell* (1946), (Cal. App.) 173 P.2d 560, 562-563.)

The court did not expressly find that the defendants entered into the 1944 modification agreement with the specific intent not to perform their obligations thereunder but the evidence and the findings which were made amply support such a deduction. It is to be noted that defendants, having induced plaintiffs to relinquish their right to sell the premises free and clear of the lease (and which sale, even under the Emergency Price Control Act of 1942 and the Rent Regulations for Housing could have resulted in the dispossession of defendants) at once showed their bad faith in the matter by suing the plaintiffs for triple damages, asserting that the cash paid by defendants to plaintiffs as a part of the consideration for the latter's relinquishment of their right to sell free and clear, was additional rent. Their contention was disposed of adversely to the defendants herein. (*Bell* v. *Lovett* (1946), *supra*, 75 Cal.App.2d 883.) Apparently, it is in furtherance of the same general plan that the defendants have, as found by the court, continued to operate the motor hotel business and to withhold possession of the premises, such withholding being "deliberate, intentional, wilful and with knowledge that all of the defendants' rights therein and their right to possession had terminated."

As previously indicated the legality of the consideration and of the object of the controlling contract was established in the earlier litigation (*Bell* v. *Lovett* (1946), *supra*, 75 Cal. App.2d 883) and is now res judicata. Whatever might be our views on the several contentions of the parties if the matter were before us initially, certainly we cannot now say that that part of the modification agreement by which the lessees relinquished their interest in the leased premises effective September 30, 1945, is void despite the fact that it has been finally adjudicated between the parties that the agreement is valid. The contract was executed as an entirety and it is obvious that the lessors would not have entered into it without the agreement by the lessees that their interest in the property and right to occupancy terminated on September 30, 1945. As stated in *Krier* v. *Krier* (1946), 28 Cal.2d 841, 843 [172 P.2d 681], "a judgment in a prior action between the same parties on the identical cause of action is res judicata, and a bar to a second suit thereon, not only as to issues

actually determined therein but also as to issues necessarily involved. [Citations.] And even though the causes of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination. [Citations.]''

Courts should abhor and refuse to unnecessarily perpetrate injustice. Here the defendants have received from the plaintiffs full measure of performance. The plaintiffs surrendered their right to sell their property and thereupon and thereby cause defendants to be dispossessed. The defendants having had the full benefit of plaintiffs' forbearance now assert that the contract by which they procured such forbearance was void. And even though such contract has been finally adjudicated valid this court now disregards the law of res judicata and supports defendants in their ''wilful and deliberate'' refusal to perform. Such applications of the Emergency Price Control Act tend to bring odium to its administration.

Under the circumstances shown in this record the rights of the defendants to possession of and to operate and enjoy the profits of their business venture ceased on September 30, 1945. Their possession and operation of the business premises since that date have been unlawful. The judgment of the trial court is amply supported and should be affirmed.

Shenk, J., and Carter, J., concurred.

Respondents' petition for a rehearing was denied May 26, 1947. Shenk, J., Carter, J., and Schauer, J., voted for a rehearing.