STUYVESANT HOUSING CORPORATION, Plaintiff, *v.* STUYVESANT TOWN CORPORATION et al., Defendants.

Supreme Court, Special Term, New York County, August 31, 1944.

*Samuel Seabury* and *Churchill Rodgers* for Stuyvesant Town Corporation and Metropolitan Life Insurance Company, defendants.

*Ignatius M. Wilkinson, Corporation Counsel (William S. Lebwohl* of counsel), in person and for City of New York and others, defendants.

*Charles L. Fleece* for plaintiff.

McLAUGHLIN, J. This is a motion for summary judgment. The action is for an injunction restraining the maintaining of a condemnation proceeding to acquire property in an area on the " East Side ". It is a substandard area which the authorities intend to improve with a housing development. This condemnation is the result of a contract dated June 1, 1943, between the City of New York, the Metropolitan Life Insurance Company and Stuyvesant Town Corporation made pursuant to the provisions of the Redevelopment Companies Law (L. 1943, ch. 234). It has previously been determined that this law is constitutional. (*Matter of Murray* v. *LaGuardia,* 291 N. Y. 320.)

The plaintiff is the owner of property in the area to be acquired. It is a corporation organized pursuant to the provisions of the State Housing Law (L. 1926, ch. 823; now Public Housing Law, L. 1939,. ch. 808). It asserts that its constitutional rights have been invaded because it built these structures under the State Housing Law which it claims resulted in a contract with the State and a part of the exemption granted by the statute (taxes of the City) still has years to run. It asserts that such a contract cannot be impaired by the transfer and exercise of the power of condemnation by the State to the City and in turn to the other defendants.

Whether the plaintiff has a contract with the State is a question of law. After reviewing all the facts disclosed by the papers and reading them in the light of the State Constitution and existing statutes the court finds there is no such contract, either express or implied. What the State did was to give certain exemptions provided a building, as contemplated by the statute, was erected. The granting of such exemptions created no different rights than those given by the sovereign to religious, educational or charitable bodies. The bringing of the condemnation proceeding does not infringe upon any contractual rights of the plaintiff. Moreover there is nothing in the State Housing Law which shows or even intimates that the State intended to or ever tried to surrender its sovereign power to take any private property for public

use when it gave the plaintiff and others exemptions by reason of the erection of specified buildings. Even if there were such a contract (although there is none) the State could not surrender this right. This is well expressed as follows: " The sovereign power to take private property for public use cannot be surrendered, alienated, or contracted away, since it is essential to the public welfare and a sovereign power cannot be surrendered; the legislature or a municipality cannot bind itself or its successors not to exercise the power when public necessity and convenience require such exercise. If there is an attempt to contract away the power, it may be resumed at will. Likewise the power cannot be impaired " (29 C. J. S., Eminent Domain, § 4, p. 782). As stated in 1 Lewis on Eminent Domain ([3d ed.] § 3, p. 7): " The correct view is that the power of eminent domain is not a reversed, but an inherent right, a right which pertains to sovereignty as a necessary, constant and inextinguishable attribute." (The context indicates that the word " reversed " was intended to be " reserved ".) In *People* v. *Adirondack Railway Co.* (160 N. Y. 225, 236–237, affd. 176 U. S. 235) the Court of Appeals said: " The power of taxation, the police power and the power of eminent domain, underline the Constitution and rest upon necessity, because there can be no effective government without them. They are not conferred by the Constitution, but exist because the state exists, and they are essential to its existence. They are not rights reserved, but rights inherent in the state as sovereign. While they may be limited and regulated by the Constitution, they exist independently of it as a necessary attribute of sovereignty. They belong to the state because it is sovereign, and they are a necessity of government. *The state cannot surrender them, because it cannot surrender a sovereign power. It cannot be a state without them. They are as enduring and indestructible as the state itself.*" (Italics supplied.)

The theory that the State contracted away its right to condemn cannot be sustained even though there was a contract entered into between plaintiff and the State.

The plaintiff relies in part upon the case of *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealey* (224 N. Y. 187) as authority for its position. It is not in point because the question of surrender of sovereign power was not involved and the privilege of exemption must always yield to the right of the sovereign power to condemn.

The plaintiff also urges that as its property is already dedicated to a public use the City cannot condemn it and turn it over to the Stuyvesant Town Corporation for housing purposes. It urges that a proper construction of both statutes (State Housing Law and Redevelopment Companies Law) requires that this condemnation proceeding be enjoined insofar as the plaintiff is concerned. Of course all such statutes should be read together and in conjunction with subsequent sections of the New York State Constitution. Assuming that there is a public use in what the plaintiff is conducting, nevertheless such property is the subject of condemnation. (*People* v. *Adirondack Railway Co., supra.*) Moreover, on the admitted facts the defendants' proposed use is a superior use because the statute so states and also in that it affects a whole blighted section of this City while the plaintiff's property is but a small portion of land within the area. Section 20 of the Redevelopment Companies Law merely carries out the mandate of the State Constitution (art. XVIII) which gives great latitude in the curing of evils of bad housing conditions. It reads in part as follows: " Real property in an area, needed or convenient for the project, which is to be acquired by condemnation pursuant to this section, may be acquired by the municipality for the project, including any property devoted to a public use, whether or not held in trust, notwithstanding that such property may have been previously acquired by condemnation or is owned by a public utility corporation, it being hereby expressly determined that the public use in conformity with the provisions of this act shall be deemed a superior public use."

The language is explicit in conferring power to condemn the property of the plaintiff. The plan and contract before the court are the result of the actions taken by our administrative agencies and governing bodies. This power is conferred upon them by this statute which has been held constitutional. (*Matter of Murray* v. *LaGuardia,* 291 N. Y. 320, *supra.*) The language is, therefore, controlling and although there had been previous condemnation or purchase for public use (which there has not been), nevertheless this present condemnation of plaintiff's property would have to proceed. (*People* v. *Adirondack Railway Co.,* 160 N. Y. 225, *supra.*)

Even if this statute did not have this exact provision as to superior use, the result would necessarily be the same because such use is implicit in the statute and its purposes. The legislative intent would still be present requiring a superseding of the present use by that contemplated in the Redevelopment

Companies Law. Here we have not only the express legislative authorization to condemn this property and all others in the area but also a plain inference of the right to condemn which flows from the amendment to the Constitution and the passage of the act itself without taking into consideration the historical background of both. It follows that the use by the plaintiff (though praiseworthy) complying with the State Housing Law is no ground for denying condemnation. The present situation presents no impairment of any contract. Plaintiff is like any other claimant and its complete and only legal remedy seems to be to file a claim for damages in the condemnation proceeding, just as any other property owner may do and obtain just compensation.

There is no ground for enjoining the sovereign or its legally delegated agents from proceeding with the condemnation proceeding. Motion for summary judgment is granted. Settle order.