PAXSON et al. v. SMOCK, Secretary of Highways of Pennsylvania, et al.

Civil Action No. 7595.

District Court, E. D. Pennsylvania.

Sept. 26, 1947.

Joseph H. Resnick, of Philadelphia, Pa., for plaintiffs.

Richard Hay Woolsey, of Philadelphia, Pa., and Thomas C. Evans and H. Albert Lehrman, both of Harrisburg, Pa., for defendants.

BARD, District Judge.

This comes before the Court:

(1) On plaintiffs' complaint and motion for an injunction to restrain defendants from evicting plaintiffs from premises tenanted by plaintiffs and owned by the Commonwealth of Pennsylvania; and

(2) On defendants' motion to dismiss plaintiffs' complaint.

At the hearing on plaintiffs' motion for a preliminary injunction it was agreed that the testimony presented be considered as on final hearing.

I make the following special

Findings of Fact:

1. The Commonwealth of Pennsylvania is the owner of the following premises situate in the City of Philadelphia:

(a) 244 North Franklin Street

(b) 816 Vine Street

(c) 728 Vine Street

(d) 268 North Darien Street

(e) 820 Vine Street

(f) 822 Vine Street

2. These premises are all located in the vicinity of Vine Street between Sixth and Ninth Streets. Title to these premises was originally acquired by the Commonwealth of Pennsylvania in 1942 by condemnation proceedings for the purpose of widening Vine Street from Sixth Street to Eighteenth Street in order to relieve highway congestion to and from the Delaware River Bridge.

3. Because of the War, the Commonwealth did not proceed with its plans of demolition of the houses erected on these premises, but instead issued leases covering these premises to sundry tenants at various intervals.

4. On October 17, 1945, the Commonwealth leased the premises 244 North Franklin Street to Leroy W. Paxson and Julia A. Paxson, his wife, for the term of month to month, for an annual rental of $660, payable in equal monthly instalments of $55.

5. The Paxson family occupied these premises as a family residence until September 23, 1947, and, in addition, Mrs. Paxson conducted a rooming house until that date.

6. On January 1, 1943, the Commonwealth leased the premises 816 Vine Street, as a dwelling and clothing store, to Max Glick, who died in June, 1945.

7. The house is occupied as a dwelling by Anna Glick, widow of Max Glick, and by two other families.

8. On June 23, 1944, the Commonwealth leased the premises 728 Vine Street to Vincent Leone as a barber shop and apartment, at a monthly rental of $35.

9. Vincent Leone conducts a barber shop on the first floor of these premises. The apartment upstairs is presently vacant, the former tenants having moved out.

10. On July 1, 1944, the Commonwealth leased the premises 268 North Darien Street to Mae Lyster at a rental of $15 per month.

11. These premises are occupied by Mae Lyster and her husband for dwelling purposes.

12. On September 1, 1946, the Commonwealth leased the second floor of the premises 820 Vine Street to Rev. J. H. Simmons, for the purpose of religious meetings, at a rental of $25 per month.

13. Rev. Simmons conducts religious meetings on the second floor of these premises. He also occupies the third floor with his wife for dwelling purposes, although the use of any part of the premises for living purposes was, until the date of the present hearing, without the knowledge of any authorized agent of the Commonwealth.

14. On May 11, 1943, the Commonwealth leased the premises 822 Vine Street to John Thompson as a pottery shop at a monthly rental of $25.

15. These premises have been occupied for the past three years by Harry Kaslov and his family as a dwelling. Mr. Kaslov is a cousin of Mr. Thompson.

16. The authorized agent of the Commonwealth has been aware that these premises 822 Vine Street have been used for dwelling purposes, although he has not been aware of the identity of each individual occupant.

17. The persons occupying the above described premises have paid the rent stipulated in the leases up to the term ending June 30, 1947, and have tendered the rent since that date, which tender has been refused by the Commonwealth.

18. The Secretary of Property and Supplies served legal notices upon all of the plaintiffs to quit, remove from, and deliver up possession of the premises they occupy as of June 30, 1947.

19. The Commonwealth intends to demolish the houses and build a highway, and has not expressed an intention to replace the houses demolished with new housing accommodations.

## Discussion.

This case involves the applicability and construction of Section 209 of the Housing and Rent Act of 1947.[1]

The Commonwealth of Pennsylvania takes the position that the evictions which it contemplates are authorized under Section 209(b) of the Act. Section 209(b), insofar as it is here pertinent, reads:

"Notwithstanding any other provision of this Act, the United States or any State or local public agency may maintain an action or proceeding to recover possession of any housing accommodations operated by it where such action or proceeding is authorized by the statute or regulations under which such accommodations are administered: * * *."

The plaintiffs urge that Section 209(b) is not applicable in the instant case. They contend that this section applies only to the situation where the various governmental entities mentioned are administering the premises in question as a public housing project. I think that the wording of Section 209(b) which speaks of accommodations which are "operated" and "administered" lends support to the plaintiffs' contention.

■ However, since the proper construction of Section 209(b) is not, on its face, free from doubt, it is appropriate to inquire into its legislative history in order to ascertain the intent of the Congress in enacting this section of the Housing and Rent Act of 1947.

■ The Housing and Rent Act of 1947 was passed by the Congress as H.R.3203. I am unable to find in the reported Congressional debate on H.R.3203 any evidence of the intent of the legislators in passing Section 209(b) of that Act. However, I find significant statements concerning this section in the course of the Senate debate on Senate Bill S.1017, which was the Senate's own housing and rent control bill.

1 P.L. 129, 80th Cong. ch. 163, 1st Session, 50 U.S.C.A.Appendix, § 1899.

After the House of Representatives passed H.R.3203, the Senate substituted the provisions of S.1017 for Title II of H.R.3203, and postponed indefinitely action on S.1017 as such.

What is now Section 209(b) of the Housing and Rent Act of 1947 (with the exception of the proviso clause, which I do not think is pertinent in the instant case) was originally offered by Senator Ellender of Louisiana as an amendment to S.1017. Senator Ellender's remarks in presenting this amendment, and the ensuing debate thereon, seem to make it clear that the purpose of Section 209(b) was to permit public housing authorities to evict tenants, principally those whose incomes had risen above the maximum allowable for occupying such accommodations. Appended in the margin are excerpts from the Congressional Record that lend support to this view.[2]

█ I cannot see how the premises in question in the instant case can be called "public housing." I can find no suggestion of any altruistic purpose on the part of the Commonwealth in renting these accommodations, nor any intention to subsidize low-

---

2 Congressional Record, 80th Cong., 1st Session, Vol. 93, No. 102, Thursday, May 29, 1947.

At page 6194:

"Mr. Ellender. * * * I have an amendment which I have presented to the Senator in charge of the Bill, Mr. Buck. It is very brief and he has agreed to it."

At page 6195:

"On page 10, after line 24, I propose to insert:

"(c) Notwithstanding any other provision of this act, the United States or any State or local public agency may maintain an action or proceeding to recover possession of any housing accommodations operated by it where such action or proceeding is authorized by the statute or regulations under which such accommodations are administered.

"Mr. President, my amendment would make it clear that the provisions of this bill which would prohibit the eviction of tenants except in the specific cases enumerated therein could not operate to prevent the eviction of tenants of public housing projects who have ceased to qualify for tenancy in such projects. Many such projects were built under Federal and State laws which restrict occupancy in the projects to families of low income. However, in many cases, tenants who had low incomes at the time they were admitted have since become ineligible for continued occupancy because of increases in income. In other cases, war workers were admitted to low-rent housing projects pursuant to Federal and State laws which temporarily waived low-income requirements. With the return of peacetime conditions, Federal, State, and local housing agencies are now charged with the responsibility of restricting occupancy of low-rent housing projects to veterans and their families and other families of low income who are now crowded together in unsafe or unsanitary dwellings. This amendment would make it clear that these agencies may continue to carry out their responsibility under Federal and State laws, and for such purpose can maintain actions to recover possession of housing accommodations in public housing projects in cases in which such accommodations are occupied by ineligible families.

"Similarly, cases will arise which may require eviction of tenants from public housing projects other than low-rent projects, as when a war-housing project is in the process of being relocated under Title V of the Lanham Act [42 U.S.C.A. § 1571 et seq.] for occupancy by veterans. * * *"

"Mr. Ellender. The amendment applies solely to public housing. As I indicated a moment ago, there are many tenants in some of the public housing projects at the moment who can pay an economic rent. It is feared that under the provisions of section 7 of the bill such tenants cannot be evicted; and the purpose of the amendment is to make it possible for the authorities in charge of public housing to be able to evict those who are not entitled to be there."

"Mr. Ellender. The purpose of the amendment, as I have just indicated, is to enable the Housing Authority to obey the law, because none but persons who are in the low-income brackets should be permitted to remain in such housing. The Senator will recall that many war workers were permitted to obtain accommodations in low-rent housing projects during the war. Many of them earning from $3,500 to $4,000 a year, are now occupying such premises. It is feared that if the bill should pass as it has been reported to the Senate the Housing Authority will be unable to evict such tenants and make room for persons who are really entitled to the accommodations."

income groups by affording them the benefit of low-cost housing. I think that the Pennsylvania statute under which the premises were rented[3] indicates that the transactions here between the Commonwealth and the tenants were entered into for purely business reasons by the Commonwealth, and that the Commonwealth's purpose in renting the premises was simply to derive income from otherwise unproductive real estate which it happened to own.

It is therefore my opinion that Section 209(b) of the Housing and Rent Act of 1947, since it is inapplicable, affords no help to the Commonwealth in the instant case.

■ Section 209(a) of the Act, which encompasses the remaining provisions concerning eviction, is also of no avail to the Commonwealth as a defense to the present action. As I have previously stated, the Commonwealth's avowed purpose in seeking to evict the tenants is to demolish the premises and build a new highway in their place. It is true that Section 209(a) (4) permits the landlord under certain circumstances to recover possession of housing accommodations for the immediate purpose of "demolishing them and replacing them with new construction." Some suggestion has been made that the highway contemplated might qualify as "new construction" within the meaning of this section. I think it would be difficult to imagine an interpretation of the phrase "new construction" which would be more repugnant to the manifest purposes of this piece of legislation.

■ It has been argued that it could not have been the intention of the Congress, in passing the Housing and Rent Act of 1947, to hold up badly needed public improvements such as the project of widening Vine Street which the Commonwealth contemplates. The Court agrees that the Commonwealth's project is a commendable one, and that the contemplated improvements are badly needed. But the Court cannot apply a flexible interpretation to an inflexible statute; it cannot ignore the legislative mandate expressed by the Congress in the Housing and Rent Act of 1947, which declares that evictions are permissible only in certain enumerated situations, none of which is present in the instant case. It is not for the Court here to constitute itself the arbiter of policy; nor is the Court the proper forum in which to debate the wisdom or folly of the Housing and Rent Act of 1947 as it operates in the instant case. It is our duty solely to interpret what the Congress has written into the statute.

■ The Commonwealth has seen fit voluntarily to enter into the relationship of landlord and tenant with those who are now occupying the premises which the Commonwealth had previously condemned. Having done so, it must accept the incidents of that relationship which have been imposed by the Congress in the Housing and Rent Act of 1947. Under Section 209 of that Act, I think it is clear that the tenants may not be evicted from living or dwelling quarters for the · purposes presently contemplated by the Commonwealth.

There remains to be considered the application of the law of this case to the facts of the claims of certain individual plaintiffs for injunctive relief.

■ The plaintiff Simmons did not, in my opinion, establish that any authorized agent of the Commonwealth knew, or had reason to know, that Simmons has been occupying the third floor of the premises 820 Vine Street for dwelling purposes. Therefore, since the premises were leased to Simmons for the purpose of religious meetings, he is not entitled to protection

---

· 3 Administrative Code of 1929, P.L. 177, Section 2402(i), 71 P.S.Pa., § 632 (i): "The Department of Property and Supplies shall have the power, and its duty shall be: * * * (i) To rent to individuals, firms, or corporations, or the Government of the United States or any branch or agency thereof, such real estate, owned by the Commonwealth, as is not being used in connection with the work of any department, board, or commission thereof, upon such terms and conditions as the Secretary of Property and Supplies may prescribe, with the approval of the Governor in writing: Provided, however, That no lease executed under the authority hereby conferred shall be for a longer term than one year and so on from year to year;"

from eviction under the Housing and Rent Act of 1947.

 The plaintiff Kaslov, who occupies the premises 822 Vine Street, which were originally leased to his cousin, John Thompson, as a pottery shop, has established that the Commonwealth, with the knowledge that the premises were in fact being used for dwelling purposes, has accepted rent from himself, Kaslov. Therefore, Kaslov is entitled to protection from eviction.

■ The plaintiff Leone has a lease for 728 Vine Street for occupancy as a barber shop and as an apartment. He is presently occupying part of the premises with his barber shop. The rest of the premises were occupied as living quarters, but are now vacant. Leone is not entitled to protection from eviction from that part of the premises used as a barber shop. However, the Commonwealth may not by eviction proceedings disturb Leone's possession of the remainder of the premises that were formerly used as living quarters.

■ The plaintiffs Leroy W. Paxson and Julia A. Paxson, who formerly occupied the premises 244 North Franklin Street, vacated those premises on September 23, 1947. Therefore, no party is presently before the Court who has standing to seek injunctive relief with respect to those premises.

## Conclusions of Law.

1. This Court has jurisdiction of the subject matter and the parties to this action.

2. The Commonwealth may not, under the facts of this case, evict the plaintiffs Anna Glick, John Lyster, Mae Lyster and Harry Kaslov.

3. The Commonwealth may not evict the plaintiff Vincent Leone from that part of the premises 728 Vine Street that under his lease has been used as living quarters.

4. An order will be entered denying defendants' motion to dismiss the plaintiffs' complaint.

5. A form of injunction may be submitted and will be entered restraining and enjoining the defendants:

(a) From evicting the plaintiffs Anna Glick, John Lyster, Mae Lyster and Harry Kaslov, and

(b) From evicting the plaintiff Vincent Leone from that part of the premises 728 Vine Street that under his lease has been used as living quarters.