KNICKERBOCKER VILLAGE, INC., Landlord, *v.* ANNA LACKOW et al., Tenants.

Municipal Court of the City of New York, Borough of Manhattan, November 21, 1947.

*Kenneth C. Newman* for landlord.

*George Langberg, Kupfer & Levine, Barney Rosenstein* and *Joseph J. Rothstein* for tenants.

SCHWEITZER, J.   The landlord has initiated eighteen summary proceedings to secure possession of the housing accommodations occupied by each of the tenants named in the respective petitions.

The landlord, a limited dividend housing corporation, organized in 1933, pursuant to the provisions of the State Housing Law (L. 1926, ch. 823), owns and operates a housing project known as The Knickerbocker Village, at 10–40 Monroe Street, New York, New York, containing approximately fifteen hundred apartments which are rented at an average rental of $12.50 per room, per month.

Each of the petitions allege that the landlord and the tenant " entered into an agreement * * * for the term of month to month " which said month-to-month tenancy was terminated by the service of the usual thirty-day notice.

The landlord predicates its right to maintain the proceedings for an alleged violation by the respective tenants of the obligations of their tenancy in that, (a) the tenant failed to supply the landlord with information concerning his income, or (b) if such information was supplied, the disclosure reflected an income in excess of that allegedly permitted by a rule or regulation promulgated by the Commissioner of Housing of the State of New York, for the respective apartments in question.

The obligation of the tenancy claimed by the landlord to have been violated, is based upon the following regulations promulgated by the Commissioner of Housing of the State of New York (1 N. Y. Official Compilation of Codes, Rules & Regulations, pp. 791, 792–793).

Subdivision e of rule 5: " *Tenant income.*  No application for accommodations in a housing company project shall be approved if the probable aggregate annual income of the person or family to occupy such accommodations exceeds five times the annual rental (including the value or cost to the tenant in an amount to be fixed by the Commissioner of heat, light, water and cooking fuel), except that in the case of families with three or more

dependents such probable income may not exceed six times such rental. Aggregate annual income consists of the annual income of the chief wage earner of the family plus all other income of other adult members of the family plus 60 per cent of the income of any gainfully employed minor. When a minor attains his majority of 21, the full amount of his probable income shall be included in the computation of family income."

Subdivision d of rule 5: "*Investigation and approval of application.* Each housing company shall investigate the statements set forth in the application regarding employment and income by directing a written inquiry to the applicant's employer. For applicants who are self-employed, the housing company shall obtain from the applicant a sworn copy of his last federal income tax return. The housing company shall obtain such sworn copy of the federal income tax return in any other case when requested to do so by the Division. The housing company shall forward to the Commissioner each application and all evidence as to income together with notice of its intention to approve or reject such application."

The landlord asserts in its trial memorandum that the proceedings were initiated by it at the direction and insistence of the Commissioner of Housing, and apparently in fear that for failure to commence the proceeding, the landlord would be deprived of the benefits accruing to it under the law authorizing its corporate existence.

The State Housing Law, pursuant to which the landlord was organized, was enacted to eliminate unsanitary and congested housing conditions which existed in designated slum areas in the city of New York. It sought a means of providing housing, at low cost and at rentals to be fixed by the State Board of Housing.

The report of the State Board of Housing reflects the object sought to be accomplished by the Law.

"The law contemplates housing on a public utility basis — limited returns, limited rents, private operation, the use of private capital, and public funds when available. The scheme involves a threefold co-operation — private capital furnishes the funds, the city furnishes a partial tax exemption, and the State sets up and defrays the expenses of the State Board of Housing". (Report of the State Board of Housing to the Governor, N. Y. Legis. Doc., 1939, No. 60, p. 28.)

In 1939, the Public Housing Law was enacted to supersede the State Housing Law and the powers of the State Board of Housing were transferred to the Commissioner of Housing (L. 1939 ch. 808).

Section 19 of the Public Housing Law grants to the Commissioner of Housing, power to promulgate rules and regulations to effectuate his duties. The regulations hereinabove set forth were issued by the commissioner pursuant thereto. Subdivision 3 of section 182 of the Public Housing Law provides in part: "The dwellings in a housing company project *hereafter constructed* shall be available for persons or families whose probable aggregate annual income at the time of admission does not exceed five times the rental, (including the value or cost to them of heat, light, water and cooking fuel) of the dwellings to be furnished such persons or families, except that in the case of families with three or more dependents such ratio shall not exceed six to one." (Italics supplied.)

If the commissioner had no power to issue the regulation upon which the landlord so strongly relies, then the proceedings must fail.

I find no basis in law for the commissioner to make the regulation in question with respect to the tenants of Knickerbocker Village as it is conceded that Knickerbocker Village was constructed prior to 1939.

Section 19 and subdivision 3 of section 182 of the Public Housing Law were amended simultaneously at the same session of the Legislature (L. 1940, ch. 148).

In view of the specific restriction contained in the Public Housing Law (§ 182, subd. 3) it cannot be assumed that the Legislature intended to grant power to the commissioner to make regulations with respect to tenancies in a project constructed prior to 1939, when it has defined that power as applicable only to "*dwellings in a housing company project hereafter constructed*". (Italics mine.)

The only intendment that can be drawn is that the Legislature precluded the commissioner from promulgating any rule or regulation concerning the ratio of income to rental with respect to any tenancy in a project constructed prior to 1939.

The commissioner does not have the power to compel landlord to execute or renew a lease. (*Weinfeld* v. *Knickerbocker Village, Inc.*, 261 App. Div. 383, affd. 286 N. Y. 590).

Mr. Justice O'MALLEY, writing for a unanimous court, stated (p. 385):

"Whether this be the intent and force of the sentence quoted, we need not, and do not, now decide. In our view, this provision does not relate to any housing company project constructed prior to the effective date in 1939 of the Public Housing Law.

"It is to be noted, that while the first two subdivisions of section 182 refer generally to all housing .companies, subdivision 3 at the very outset relates to "dwellings in a housing company project *hereafter constructed.* (Italics ours.) * * * There is nothing to show an intent to make subdivision 3 retroactive, as in other sections of the Public Housing Law. On the contrary, there are express words showing that the particular subdivision was prospective only."

If the Commissioner of Housing cannot, by a rule or regulation promulgated by him, compel the landlord to renew a lease, or to accept or reject a tenant (except where such rejection is predicated upon discrimination because of race, creed, color or faith), then the commissioner similarly has no power to compel the eviction of a tenant for a claimed violation of his regulation having reference to the ratio of income to rental or for a failure to disclose his income.

The commissioner not having the power to make the regulation in question, there can be no violation by the tenant of the obligation of his tenancy, claimed by the landlord to be implied by law therein, by virtue of the regulation.

The court does not deem it necessary to decide whether the violations claimed by the landlord were in fact violations of an obligation of a tenancy implied by law in view of its determination that the commissioner was without power to make the regulation.

Equally specious and unavailing is the landlord's claim that it may avail itself of the provisions of subdivision (b) of section 209 of the Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1899) which permits units of any State or local agency to maintain a proceeding to recover possession of any housing accommodations operated by it, where such action or proceeding is authorized by the statute or regulation under which such accommodations are administered.

Subdivision (b) of section 209, provides: "* * * the United States or any State or local public agency may maintain an action or proceeding to recover possession of any housing accommodations operated by it where such action or proceeding is authorized by the statute or regulation under which such accommodations are administered".

Local Law No. 66 of 1947 of the City of New York exempts from the provisions thereof (§ U41-7.0, subd. *l*): "* * * any federal, state, municipal or other governmental agency or public authority".

The landlord is not an entity mentioned in either statute.

The State or local public agencies referred to in the Housing and Rent Act of 1947, and in Local Law No. 66 have reference only to those agencies or authorities which are the alter ego of the sovereign, and whose profits, acts, and liabilities are that of the sovereign.

The " agency " referred to by the statute has reference to a housing authority created pursuant to chapter 823 of the Laws of 1926 (State Housing Law), or chapter 808 of the Laws of 1939 (Public Housing Law), and in the city of New York, it is the New York City Housing Authority.

It embraces and includes all of the public housing authorities which are the direct agencies of the State or municipalities in which they are established and are true corporate governmental agencies. (1943 Atty. Gen. 232.)

The landlord is a limited dividend housing corporation organized for profit (limited); its assets and liabilities are its own; it manages its own property; and its employees are those of a private corporation. It can sue and be sued freely. An " authority " which is a public agency, can only be sued upon compliance with law. (Public Housing Law, § 157.)

A limited dividend housing corporation by virtue of its limited profits, receives designated benefits, such as limited municipal taxation, exemption from State taxation, and a limited right of eminent domain. These benefits are provided to induce investment in projects to effectuate public housing. The benefits afforded it by law are insufficient to transform a private corporation into a public agency.

The property of a limited dividend housing corporation is subject to condemnation although it is given a limited right of eminent domain. (*Stuyvesant Housing Corp.* v. *Stuyvesant Town Corp.* 183 Misc. 662.)

The landlord has heretofore successfully contended before the highest court of this State that it is a private corporation. An examination by the court of the brief submitted by the landlord to the Court of Appeals in *Weinfeld* v. *Knickerbocker Village, Inc.* (*supra*), reflects the following contention by the petitioner (p. 64): " These limited dividend housing companies are not agencies or instrumentalities of the State any more than any of the numerous other corporations, such as charitable, educational, public utility, insurance or banking corporations, are, which in return for some privilege extended by the State, agree to a certain amount of State supervision."

The position so successfully maintained by this landlord there, is diametrically opposed to the contentions advanced by it **to this court.**

The court does not deem it necessary or appropriate to pass upon other defenses raised by the tenants in view of the foregoing.

Final order will be entered in each of the proceedings in favor of the tenants, dismissing the respective petitions on the merits.