GLEN, J.
This is an appeal by defendants from a judgment of eviction after a trial before the court without a jury.
*888 Prior to the commencement of the action herein the city of San Diego, a municipal corporation, contracted with the Federal Public Housing Authority for the operation of a 400-unit housing project near San Diego State College, which will be hereinafter referred to as “the College.” It is conceded by the parties that the city had authority, pursuant to the agreement, to manage and operate said project as a public housing project for the benefit of student veterans attending the college.
In February, 1947, the city contracted with plaintiff in writing, whereby the plaintiff, a nonprofit corporation, agreed to manage and operate the project and abide by all the rules then or thereafter promulgated by the Federal Public Housing Authority governing the operation of housing projects of the type in question. It was provided in that agreement that the college could not, without the written consent of the city, admit to occupancy in any of the accommodations any person other than a student veteran attending the college, and his immediate family; employees necessary for proper management and operation and not more than 5 per cent nonveteran faculty members, all in accordance with the National Housing Administration directive authorized by Public Law 697.
It is further conceded that some time after execution of the agreement between the city and the college and due to a vacation schedule at the college, there were not enough available student veterans to fully occupy the housing project and it was proposed to rent the unused premises to non-student veterans, and to waive temporarily the requirement that the veteran be a student at the college. Pursuant to this plan plaintiff obtained from the city what purports to be a waiver of the eligibility requirements set forth in its agreement with the city, by way of a letter dated March 3, 1947. This letter is addressed to the assistant city manager of the city and signed by the comptroller of the college. The letter is as follows:
“Pursuant to the terms of the enclosed signed contract the following request is made:
“That non-student veterans with family be allowed to occupy units at Riverlawn or Loma Park where vacancies exist and are not required by student veterans. Occupation of these units shall conform to FPHA regulations.
“If this is satisfactory will you please return an approved copy of this letter.”
*889 The approval of the city manager is endorsed on the bottom of the letter.
Thereafter plaintiff rented a unit of the housing project known as 3435 Holyoke Street, building 62, apartment 1, to defendants, one of whom was a veteran but not a student at the college. It was provided in the written terms and conditions of occupancy between the plaintiff and the defendants, among other things, that termination of the tenancy may be effected by plaintiff when neither the occupant nor any member of his family was a student at the college, as defined by plaintiff from time to time, and that termination may be effected by giving not less than fifteen (15) days’ advance notice in writing to the tenants. Such a notice terminating tenancy was given defendants and upon their refusal to vacate this action was commenced.
It is contended by defendants that any such agreement by a tenant to vacate premises upon notification by the landlord is void and of no effect, pursuant to the Housing and Rent Act of 1947 as amended, and that in any event the terms and conditions of the tenancy are ambiguous, uncertain and therefore void and unenforceable.
Plaintiff contends, on the other hand, the waiver of eligibility was merely temporary and by the terms and conditions of occupancy it was clearly provided that the failure of the plaintiff to insist in any one instance upon strict observance of the terms should not be considered a waiver in any other instance; that therefore, plaintiff could invoke the provisions of the tenancy which restricted it to student veterans at any time upon the giving of a proper notice to defendants, who at the expiration thereof were unlawfully withholding the premises.
The waiver by plaintiff of the eligibility standards, i.e., that a tenant must be a student as well as a veteran, was a waiver to enable the defendants to contract, not a waiver of a term of the tenancy contract; hence we are not concerned with the rule of waiver of strict compliance of contracts set forth in Woodard v. Glenwood Lumber Co., 171 Cal. 513 [153 P. 951],
The current federal statutes concerning eviction of tenants is set forth in Public Law 129, 80th Congress, chapter 163, 1st Session (61 Stats. 200, 50 U.S.C.A.App. § 1899), commonly known as the Housing and Rent Act of 1947 as amended. Section 209(a), (1) of that act provides as follows:
*890 “No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum, rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless—
“(1) under the law of the State in which the action or proceeding is brought the tenant is (A) violating the obligation of his tenancy (other than an obligation to pay rent higher tha,n rent permitted under this Act or an obligation to surrender possession of such housing accommodations. ...” (Italics ours.)
Defendants urge that this section of the Housing and Rent Act by its terms clearly prohibits the eviction of a tenant merely because the tenant is violating an obligation to surrender possession of such housing accommodations although he agreed to surrender possession at a given time upon notice.
The terms and conditions of occupancy executed by the parties is in substance an agreement that defendants will vacate the premises whenever in the opinion of the plaintiff, defendants or any members of their family are not, or cease to be, students at the college. The case thus involves the applicability and construction of section 209 of the Housing and Rent Act of 1947 as amended. Reliance is placed upon Lovett v. Bell, 30 Cal.2d 8 [180 P.2d 335], in which it was held that a provision in a lease that the defendant relinquished “any interest in said leased premises . . . after the 30th day of ■ September, 1945” constituted a waiver of the tenants’ right to continue occupancy and was contrary to the provisions of the federal statute then governing eviction of tenants and was void, and that such waiver was contrary to the interests of the United States as declared in said federal statute.
Lovett v. Bell, supra, involved privately owned premises and the applicability of the rent act to public housing was in no way in question in that decision.
It would appear from a careful reading of section 209(a), (1) of the act that those two sections are applicable to privately owned housing only and were not intended to and do not apply to public housing projects or publicly controlled or owned housing accommodations.
It is to be noted that the words of the act refer to “controlled housing accommodations with respect to which a maximum rent is in effect under this title." (Italics ours.)
*891 Upon further consideration of the act it is found that section 209(a), (2), (3), (4) and (5) are likewise applicable to private housing and set forth in some detail the circumstances under which a landlord may evict a tenant.
Section 209(b) of the act (50 U.S.C.A.App. § 1899, subsec. (b)), however, reads as follows:
“Notwithstanding any other provision of this Act, the United States or any State or local public agency may maintain an action or proceeding to recover possession of any housing accommodations operated by it where such action or proceeding is authorized by the statute or regulations under which such accommodations are administered: Provided, That nothing in this subsection shall be .deemed to authorize the maintenance of any such action or proceeding upon the ground that the income of the occupants of the housing accommodations exceeds the allowable maximum unless such income, less any amounts paid to such occupants by the Veterans’ Administration on account of service-connected disability or disabilities, exceeds the allowable maximum.” (Italics ours.)
In Paxson v. Smock, 73 F.Supp. 793, the construction and applicability of section 209(a) and (b) of the act as amended was considered. In that case the State of Pennsylvania had rented certain condemned premises temporarily, awaiting appropriation of funds to commence construction of certain street improvements. Subsequently, however, the tenants refused to vacate and the state took steps to evict the tenants. The tenants sought to enjoin the state. The tenants contended, as in this case, that they could not be evicted from the premises within the meaning of section 209(a), (1) of the act. The state, however, contended that section 209(b) of the act was applicable. The court said, at page 795, 796:
“The plaintiffs urge that Section 209(b) is not applicable in the instant case. They contend that this section applies only to the situation where the various governmental entities mentioned are administering the premises in question as a public housing project. I think that the wording of Section 209(b) which speaks of accommodations which are ‘operated’ and ‘administered’ lends support to the plaintiffs’ contention.
“(1) However, since the proper construction of Section 209(b) is not, on its face, free from doubt, it is appropriate to inquire into its legislative history in order to ascertain the intent of the Congress in enacting this section of the Housing and Rent Act of 1947.
*892 “(2) The Housing and Rent Act of 1947 was passed by the Congress as H. R. 3203. I am unable to find in the reported Congressional debate on H. R. 3203 any evidence of the intent of the legislators in passing Section 209(b) of that Act. However, I find significant statements concerning this section in the course of the Senate debate on Senate Bill S. 1017, which was the Senate’s own housing and rent control bill. After the House of Representatives passed H. R. 3203, the Senate substituted the provisions of S. 1017 for Title II of H. R. 3203, and postponed indefinitely action on S. 1017 as such.
“"What is now Section 209(b) of the Housing and Rent Act of 1947 (with the exception of the proviso clause, which I do not think is pertinent in the instant case) was originally offered by Senator Ellender of Louisiana as an amendment to S. 1017. Senator Ellender’s remarks in presenting this amendment, and the ensuing debate thereon, seem to make it clear that the purpose of Section 209(b) was to permit public housing authorities to evict tenants, principally those whose incomes had risen above the maximum allowable for occupying such accommodations. Appended in the margin are excerpts from the Congressional Record that lend support to this view. ’ ’
In the citation of Paxson v. Smock, supra, at page 796, excerpts from the Congressional debate upon the proposed amendments to the Housing and Rent Act of 1947 are set forth, from which it is indicated that the legislators considered section 209(b) as making clear that the Housing and Rent Act of 1947 as amended would not operate to prevent the eviction of tenants of public housing projects who have ceased to qualify for tenancy in such projects.
In the Paxson case {supra) the court decided that section 209(b) was not applicable because it found that the accommodations were not “public housing” accommodations and that the State was simply renting the premises as a private landlord to derive income from unproductive real estate it then happened to own.
In Priedlander and Curreri on Rent Control, Federal, State, Municipal, at page 122, it is said:
“The Housing and Rent Act of 1947 permits the United States or any State or local public agency to maintain dispossess proceedings to recover possession of housing accommodations operated by such Government or agency where eviction proceedings are authorized by the statute or regulations under which the accommodations are administered. . . .
*893 “Under this exemption in the 1947 Act, tenants in public housing projects operated by the Federal government, State governments, local housing authorities and similar public agencies may be dispossessed upon any ground for eviction set forth in the statutes or regulations which govern the operation of such projects, regardless of whether any of the six grounds for eviction set forth in the amended 1947 Act exist.”
In Knickerbocker Tillage v. Birnbaum, 78 N.Y.S.2d 825 at 820, local public agencies are defined as follows:
‘ ‘ The state or local public agencies referred to in the Housing and Rent Act of 1947 . . . have reference only to those' agencies or authorities which are the alter ego of the sovereign, and whose profits, accounts, and liabilities are that of the sovereign. ... It embraces and includes all of the public housing authorities which are the true agencies of the state or municipalities in which they are established and are true corporate, governmental agencies.”
No showing was made in the lower court or authority cited here that plaintiff is not a public housing agency within the meaning of section 209(b) of the act, nor are we cited to any authority, statutory, regulatory, or otherwise, under which the housing unit here under consideration is administered, which would prohibit it from maintaining an action or proceeding to recover possession upon the tenant being or becoming ineligible.
The Federal Low Rent Housing Act (61 Stats. 705, 42 U.S.C.A. App. § 1413a) provides generally that public housing authorities shall continue to have the right to maintain actions to recover possession of housing accommodations, as provided therein.
In Brand v. Chicago Housing Authority, 120 F.2d 786, the right of the Federal Housing Authority to enforce contracts of tenants to vacate upon fifteen (15) days’ notice was upheld. In that case the tenants sought to enjoin the Housing Authority from evicting them. One of their contentions was that the contract between themselves and the Housing Authority, whereby they agreed to vacate upon fifteen (15) days’ notice, was against public policy and contrary to the policy of the Federal Housing Act. It appeared that the Housing Authority had reduced the maximum statutory income allowable to tenants and had thereby disqualified the plaintiffs and had given plaintiffs notice to vacate. The court said, at page 788:
*894 “Plaintiffs’ position rests largely on the contention that by reason of their acceptance as tenants, they acquired a vested property right which could not be destroyed by what is claimed to have been the unreasonable and arbitrary act of the defendant in changing the qualifications necessary for them to continue as tenants. No authorities are cited which sustain this position, and we think it is without merit. Undoubtedly, the United States Housing Authority was empowered to fix rentals, and to change them as circumstances and experience might justify. It follows, so we think, that it also had the authority to include in its lease with the defendant a schedule of rentals and to require defendant to lease the Projects in accordance with such schedule. . . . True, as tenants, they acquired the right of possession, but this right was limited by the terms of the lease by which such right was obtained. By express provision thereof, either party was entitled to cancellation on fifteen days’ notice to the other. It is our opinion that this provision with reference to the termination of the tenancy is valid and binding upon plaintiffs in the same manner as though the lessor had been a private person rather than a Governmental Agency. . . .
“It is also argued that defendant’s eviction proceedings are contrary to the public policy as declared by both the Federal and State Housing Acts. In the first place, this argument ignores the terms and conditions of the lease by which plaintiffs obtained possession, and in the second place, there is no policy expressed or implied by which a family obtaining possession has a continuing and indefinite right of tenure. . . . To hold, as plaintiffs would have us do, that the mere selection of a tenant carries with it a continuing right of tenure irrespective of the terms and conditions upon which the tenancy was founded, would not only contravene the purpose and policy of the Act, but would come near to destroying it.”
Likewise, it may be said here that if defendants’ contentions are correct, their continuing right of occupancy, irrespective of the terms of the tenancy agreement upon which they gained possession of the premises, would defeat the whole purpose of providing public housing for veteran students. It would be possible that one could gain occupancy of the accommodations as a student veteran and 10 days later cancel his college registration and forever have public housing furnished him, or one could remain in such accommodations after graduation until he desired to vacate. Such was not intended to be per *895 mitted by Congress when it passed section 209(a) (1) of the Housing and Rent Act of 1947 as amended.
The contract between the city and the Federal Public Housing Authority under which the city agreed to administer the housing accommodations here in question is not before us. However, the agreement between the city and the plaintiff by which the plaintiff agreed to operate the housing accommodations for the city is part of the record on appeal. In that contract it is recited:
“That Whereas, the City has entered into a contract with the Federal Public Housing Authority for the operation of a 400-unit housing project constructed for student veterans attending the College; and
“Whereas, the City desires the College to manage and operate the housing project, the parties to this agreement do mutually agree as follows:
“(1) The term of this agreement shall run concurrently with the term of the agreement the City has with the Federal Public Housing Authority, dated June 26, 1946, and filed in the office of the City Clerk of The City of San Diego as Document No. 363323, unless sooner terminated by either party upon thirty days’ written notice to the other party.
“ (3) The College agrees to manage and operate the project in an efficient manner and to abide by all rules now or hereinafter promulgated by the Federal Public Housing Authority governing the operation of housing projects of the type covered by this agreement.
“ (4) The college shall not, without the written consent of the City, admit to occupancy in any dwelling accommodation provided under this agreement any person other than a student veteran attending the College and his immediate family, except such management employees whose continued presence at the project site is necessary for proper management or operation thereof, and not more than five per cent (5%) non-veteran members of the College faculty in accordance with the National Housing Administration directive authorized by P.L. 697.
“ (5) The rents to be charged shall conform to the schedule set forth in the Project Management Plan prepared by the City and approved by the FPHA.” (Italics ours.)
It is defendants’ contention that insofar as they are concerned the city waived the eligibility requirements of its contract with the plaintiff, requiring that occupants be student *896 veterans for all time. While not argued by either party, it is a serious question whether or not the city of San Diego had authority to waive any eligibility requirements for the accommodations in question. (County of San Diego v. California Water etc. Co., 30 Cal.2d 817 [186 P.2d 124, 175 A.L.R. 747].)
Assuming the city did have such authority, there is no showing that the city manager was authorized by the council of the city of San Diego to approve such waiver. Assuming that the city manager did have authority without further approval to consent- to plaintiff’s waiving the eligibility requirements for the housing project, the letter, supra, is but a limited waiver and permits nonstudent veterans to occupy the units where vacancies exist and are not required by student veterans. It is conceded that when plaintiff made its request upon defendants to vacate, the premises were required by student veterans then desiring to attend college; hence construing the waiver of the city manager together with the tenancies entered into by the plaintiff and defendants, it would appear that plaintiff at best had authority to waive the eligibility requirements only until the accommodations were required by student veterans.
Construing the tenancy in the light of the surrounding circumstances it appears to have been the intent of the parties to waive temporarily the eligibility requirements that a veteran be a student as well as a veteran in order to occupy the premises during the summer vacation and that the parties so contracted with that in mind. The provision in the tenancy requiring defendants to vacate the premises upon notice from the plaintiff are binding upon defendants and are thus enforceable. Neither are the terms and conditions of occupancy ambiguous and uncertain. Defendants only became eligible as tenants as the result of the limited waiver authorized by the city and remained eligible only so long as plaintiff did not withdraw such waiver.
The judgment is affirmed.
Turrentine, P. J., and Burch, J., concurred.