## UNITED FURNITURE CORPORATION, LEXINGTON, N. C., v. FLEMING, Temporary Controls Administrator.

### No. 5531.

Circuit Court of Appeals, Fourth Circuit.

Jan. 30, 1947.

Stahle Linn, of Salisbury, N. C., and Don A. Walser, of Lexington, N. C. (W. T. Shuford, of Salisbury, N. C., on the brief), for appellant.

Nathan Siegel, Sp. Appellate Atty., Office of Temporary Controls, Office of Price Administration, of Washington, D. C. (William E. Remy, Deputy Commissioner of Price Administration for Enforcement, and David London, Director, Litigation Division, and Albert M. Dreyer, Chief, Appellate Branch, all of Office of Price Administration, all of Washington, D. C., and Edward N. Vaden, Regional Litigation Atty., Office of Temporary Controls, Office of Price Administration, of Atlanta, Ga., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

United Furniture Company appeals from a judgment against it in the sum of $22,063.38 in favor of the Administrator of the Office of Price Administration, suing on behalf of the United States for violation of Maximum Price Regulation No. 188, whereby maximum prices for the sale of furniture were established. The violations occurred in the period between October 11, 1944, and September 11, 1945, and were involved in the sale of furniture to Montgomery Ward & Company at prices higher than those charged Montgomery Ward for similar commodities in March, 1942, the basic period. The question to be decided is whether under the peculiar circumstances of the case Montgomery Ward constituted in itself a class of purchaser within the meaning of the pertinent regulations.

The Furniture Company was engaged in the manufacture and sale of bedroom furniture in Lexington, North Carolina. In 1942 it made sales to various customers including Montgomery Ward and Reliable Stores Corporation, both of whom operated a chain of retail stores and were purchasers of the same class in the ordinary acceptation of the term. In January, 1942, as the result of negotiations and bargaining, the Furniture Company sold its products to Montgomery Ward for less than it charged other customers, including Reliable Stores. In October, 1942, this price differential was reduced and in December, 1942, it was

eliminated altogether, and thereafter Montgomery Ward paid the same prices as other chain store dealers. Consequently the prices charged Montgomery Ward during the period of the violations were in excess of the prices charged it for the same items in March, 1942, although the prices charged it during the later period were no higher than those charged during the base period to Reliable Stores.

In respect to the manner in which the prices charged Montgomery Ward during the basic period were fixed, the District Judge made the following finding:

"7th. At the time of this price differential which was made to Montgomery Ward in January, 1942, for deliveries in March, 1942, Montgomery Ward purchased approximately 9% of the defendant's output, and Reliable Stores Corporation approximately 5%. There is not any evidence to show that the defendant engaged in any practice of price differential, but the evidence discloses, as the court has heretofore found, that this special arrangement was made with Montgomery Ward as a result of negotiations and bargaining. The size of this price differential allowed to Montgomery Ward varied considerably prior and subsequent to the base period. Price differentials were also allowed to other customers, including Reliable, both prior and subsequent to the base period as the result of negotiation and bargaining. The evidence discloses that the defendant had no established or fixed policy in allowing differentials which was applied with regularity to Company customers. Such differentials resulted entirely from the respective bargaining positions of the defendant and his customers.".

During the period from May 11, 1942, to August 1, 1942, the sales prices of furniture were governed by the provisions of General Maximum Price Regulation, 9 Fed. Reg. 3153; but the pricing provisions of this Regulation, with respect to the sales by manufacturers of a large number of commodities including furniture, were superseded by the similar provisions of Maximum Price Regulation No. 188 which was issued July 29, 1942, and became effective August 1, 1942. Both regulations established maximum prices for articles at the highest price charged a "purchaser of the same class" for the same commodity during March, 1942. Section 1499.163 of Maximum Price Regulation No. 188 defines "highest price charged during March, 1942" to mean the highest price charged to a "purchaser of the same class"; and the last mentioned phrase is defined in this section of the Regulation as follows:

" 'Purchaser of the same class' and 'class of purchaser' refers to the practice adopted by the seller in setting different prices for commodities for sales to different purchasers or kinds of purchasers (for example, manufacturer, wholesaler, jobber, retailer, government agency, public institution, individual consumer) or for purchasers located in different areas or for different quantities or under different conditions of sale."

This definition of "purchaser of the same class" and "class of purchaser" is exactly the same as the definition of "purchaser of the same class" which is contained in Section 1499.20(k) of the General Maximum Price Regulation to which, as we have seen, the Furniture Company was subject from May 11 to August 1, 1942. An official interpretation of this Regulation was issued on August 20, 1942 (O.P.A. Serv. 11:968-9) in the following terms:

"Frequently, of course, a seller may have had the practice of giving a customer special low prices with the complete absence of any criteria which can be objectively applied. Thus a seller may have customarily given one customer— who by all objective tests was exactly like many other customers—a special low price out of friendship or habit, or whim, or because the particular customer was exceptionally good at haggling. In such a case, this buyer is in a separate class by himself; his class was established by the seller's practice of giving him a lower price."

Since a portion of the field originally covered by the General Maximum Price Regulation was carved out and subjected to the Maximum Price Regulation No. 188, it is obvious that the interpretation given to the provisions of the original Regulation should also be accorded to the same provi-

sions when incorporated in the later Regulation. It is also clear that the language of the Regulation, when given the interpretation originally placed upon it more than two years before the sales complained of, describes the relationship between the Furniture Company and its most favored customer. It was undoubtedly the Furniture Company's consistent practice during the basic period, as well as in the preceding and subsequent months, to allow Montgomery Ward a price differential in excess of that allowed any other customer. Our attention is called to the statement of the District Judge in the passage from his findings quoted above, that there was no evidence that the defendant engaged "in any practice of price differential". It is contended that this finding shows that the defendant did not engage in the practice of setting different prices to different purchasers or kinds of purchasers described in the Regulation. But, when the whole finding is read, it is seen that the contention is without force. There was indeed no settled or fixed policy as to the amount of differential allowed which was applicable with regularity to the company's customers; but there was a "special arrangement" under which Montgomery Ward received favored treatment in the course of negotiations and bargaining. Since it was in a superior economic position as the Furniture Company's largest and most valued customer, it was given a lower price than any other purchaser, and this treatment placed it in a class by itself so that it fell within the scope of the Regulation.

When the regulation is viewed in this setting, its importance and effectiveness in promoting the purpose of the statute to restrain the rise of prices during the war emergency are immediately apparent. The volume of business done by favored customers such as the chain store organizations of national scope and the number of persons served by them are so great that whatever affects the prices of the commodities which they purchase is bound to have a profound effect upon the general price structure of the country; and hence it was important to keep the prices of these wholesale purchases down to the level of March, 1942. These considerations also answer a contention of the defendant based upon General Price Regulation Bulletin No. 2 issued in May, 1942, for the instruction of retailers. Therein they were notified that they could not charge more than the highest price charged by them for the same goods in March, but they were also informed that they were entitled to charge all of their customers the highest price charged to any customer, and that the mere fact that they may have sold merchandise to a particular customer during March at a lower price than the price they charged others did not necessarily place that purchaser in a separate class. The bulletin was addressed to retailers and covered sales by them, and it had no bearing upon sales of goods in large quantities by wholesale dealers whose influence upon the price structure was manifestly more important. The District Judge gave the appellant the benefit of any doubt engendered by the complexity of the regulations, by finding that the appellant acted in good faith and in the belief that Montgomery Ward and Reliable Stores were in the same class and therefore the goods could be sold to both of them at the same price. The Judge therefore applied the provisions of Section 205(e) of the statute, 50 U.S.C.A.Appendix, § 925(e), and restricted the recovery to the amount of the overcharge instead of three times the amount thereof since, in the opinion of the Judge, the violation was neither willful nor the result of failure to take practical precaution against its occurrence. The decisions in other circuits support the conclusions which we have reached. See Bowles v. Nu Way Laundry Co., 10 Cir., 144 F.2d 741; Rainbow Dyeing & Cleaning Co. v. Bowles, App.D.C., 150 F.2d 273; Bowles v. Wheeler, 9 Cir., 152 F.2d 34; Porter v. Crawford & Doherty Foundry Co., 9 Cir., 154 F.2d 431.

The judgment of the District Court is affirmed.