**WOODS, Housing Expediter, Office of Housing Expediter, v. BAKER.**

**Civil Action No. 2463.**

United States District Court
W. D. Louisiana, Shreveport Division.

May 26, 1949.

H. C. Happ, Frederick C. Ward, and Michael F. Brodwick, Dallas, Tex., for plaintiff.

Chandler & Edwards, Shreveport, La., for defendant.

DAWKINS, Chief Judge.

The facts in this case are undisputed. Plaintiff purchased a large two-story building, which had been erected many years ago, for a residence. It had, before the purchase, been rented as two apartments consisting, respectively, of the lower and upper stories, with the bath for the latter situated at the rear end of the downstairs.

The plan of construction when purchased was as follows: a screened front porch on the front or west side, the left or north end of which was the wall of the first room on that side, with a door leading into it from the porch. Another door led from this porch into an entrance hall in the approximate center of the front of the building, which was 7 feet wide by 12 feet in depth, from which doors opened into the first rooms on either side. On the north or left side on entering from the front, there were four rooms in a row, with doors between, and a glassed-in porch adjoining the second and third rooms on that side, with a door opening to the third or kitchen, and another with steps leading to the back yard. The first two rooms on that side were each 17 by 17½ feet, the third, which had been equipped as a kitchen at all times, was 9 by 17 feet, and the fourth or rear room was 12 by 18, with a door leading to a fifth room at the extreme rear end of that side, which latter room had a bath on the left with a stair leading to the upper story.

On the right side of the building, after passing into the entrance hall from the front porch, as above described, there were the following rooms, each situated behind the other with connecting doors, to-wit: the first two were each 17 by 17½ feet (the same size as the corresponding ones on the north side), and a third 15 by 15 feet. Adjoining this last room at its left end was a large enclosed back porch, the dimensions not shown, but which from Exhibit "Defendant No. 1," appears to have been some 20 feet long, with an irregular width of approximately 14 feet at the end nearest the center of the building for a distance of 12 feet or the depth of the kitchen on the other side, and then reduced to about 9 feet (to provide for the rear stair porch, above mentioned) the remainder of the distance, and a rear door and steps, the latter serving as a back entrance for both sides, as well as the second floor.

In the center of the building was the entrance hall from the front porch, above mentioned, and the space some 7 feet in width, from back of this half to the rear porch (length also not shown) was divided up as follows:

On the north side or left, there was a large closet, serving that side, about 3¼ feet deep and extending east approximately one-third of the entire distance of this space; adjoining this closet on the right

were two other closets, occupying the south half of the first one-third, each about one-half the size of the one first mentioned, the front one opening into the south front room, and the other into the first bath room; this bath was approximately 7 feet wide and occupied the middle one-third of this central space and opened into the second room on the south side; while directly behind the first bath was a second one (there being three on the first floor as above stated), opening into the second room on the north and serving that side.

It is well to state at this point that the second or upper story of this building is not involved in the present controversy.

Defendant purchased the property as an investment, but before making any changes in it, asked the local rent director for advice as to whether what he proposed to do would remove it from rent control. That official responded by merely reading the statute and regulations to defendant and left the latter to his own interpretation. Baker then installed a sink and cabinets, with plumbing connections in the second room on the right or south side, closed the door from the entrance hall into the left or north side, since as above stated, there was another leading into it from the front porch, and either he or the tenant closed the entrance to the back porch on that side, thus separating the two sides of the first floor, except for the common entrance through the front porch. The left side, as above stated, had a rear outlet from the glassed-in porch to the rear yard.

Baker then rented each apartment for $60 a month, the first or north side to one Carruth, beginning July 1, 1947. Shortly after the south side was rented to another tenant by the name of Lownius. Sometime later, induced by a complaint from one of the tenants, Baker made formal application to the local director for de-control, which was denied. This ruling was taken to the regional office at Dallas for review, which set it aside on the ground that only the courts could determine what constituted a conversion within the meaning of the law. In the meantime proceedings were instituted to fix the rent on the two apartments and the local director set it at $45 per side, making his order retro-

active to the date the properties were rented. The result was that he found Baker owed the tenants refunds of $15 per month for the entire periods and when this suit was instituted by the Expediter on August 15th, 1948, the total amount alleged to be due the tenants was $255, as disclosed by detailed figures in "Exhibit A," attached to the complaint.

The prayer of the bill asks that Baker be enjoined from collecting "rent in excess of the maximum legal rent prescribed by the Control Housing Rent Regulations as heretofore or hereafter amended or in excess of the maximum legal rent permitted by any other regulation or order heretofore or hereafter adopted, pursuant to the Housing and Rent Act of 1947, 50 U.S.C. A.Appendix, § 1881 et seq., as hereafter amended or extended or superseded, or from otherwise violating the Control Housing Rent Regulations of the Housing and Rent Act of 1947, as heretofore or hereafter amended, or from violating any other regulations heretofore or hereafter adopted pursuant to the Housing and Rent Act of 1947, as heretofore or hereinafter amended or extended." And further, that, "defendant be required and directed to restore to the tenants all the rent over-charges resulting from the collection of more than the maximum legal rent(s) as hereinafter set forth on schedule A, attached hereto."

Defendant has raised the point that the law does not permit the Expediter to sue for the alleged overcharges, and while the above prayer bears some implication that any decree in plaintiff's favor should specifically order the repayment of the alleged excessive amounts to them, the contention that this can not be done without their first being made parties to the suit, is thought to be correct as a matter of procedure. However, the prayer for injunctive relief against overcharges in the future, notwithstanding the generality of the allegations, it is believed saves the complaint from the exception that it states no facts upon which plaintiff may recover.

On the Merits.

Coming to the merits of the case, the conclusion is that the facts above stat-

ed bring it within the exceptions of the law. Sec. 202(c) (3) of the Controlled Housing and Rent Act of 1947, Public Law 464, 80th Congress, Second Session, 50 U.S.C.A.Appendix, § 1892(c) (3), wherein it is provided:

"(c) the term 'controlled housing accommodations' means housing accommodations in any defense-rental area, *except that it does not include—*

\* \* \* \* \* \*

"(3) any housing accommodations (A) the construction of which was completed on or after February 1, 1947, *or which are additional housing accommodations created by conversion on or after February 1, 1947, except \* \* \*.*" (Italics by the writer.)

The Expediter has attempted to define the term "conversion" used in the statute, which is itself a part of the definition of "controlled housing accommodations," as one of the exceptions to the coverage of the Act. The Expediter defines it as follows:

"\* \* \* and the word 'conversion' means (1) a change in the structure from a non-housing to a housing use or (2) a structural change in a residential unit or units involving substantial alterations, or remodelling and resulting in the creation of additional housing accommodations".

Without discussing in detail the powers expressly or impliedly conferred upon the Expediter, it can readily be seen that, even this definition leaves a very wide field for uncertainty and interpretation of the terms "structural alterations." Recognizing this, and perhaps other uncertainties found in the amended statute, adopted after much controversy and compromising by Congress, the Expediter, in this very case, declined to pass upon the question of whether what was done by the defendant amounted to a conversion within the meaning of the law, holding this to be the duty of the courts. Decisions in other cases can have little value here, for none of them in their facts, it is believed, is similar to this one. Here, as can be seen from the description of the first floor of this large, old residence, and the exhibits "D 1" and "D 2," disclosing conditions, both before and after the division into two apartments, were ideal for converting the space formerly consisting of some nine to ten rooms with porches, halls, closets, three baths, etc, into complete units for separate accommodations, by the expenditure of a comparatively small amount and the closing of a few doors. If, instead of the number of rooms and baths which existed, there had been several others which could have been so converted, with equal ease, so as to furnish good accommodations for three or more tenants, can it be said that the owner would be denied the right to make the conversion and thereby add two or more separate units to the sum total of housing accommodations, simply because it was unnecessary to tear out any partitions, build other walls, reduce the size of the rooms, etc? It would seem not. In this case it is simply a difference in degree, and no more reason can be seen for denying the defendant here the right to produce a similar result on a smaller scale when in reality there are now two complete and well adapted units where before there was only one. It seems to be conceded that the purpose of the law was to encourage the providing of additional housing accommodations by permitting them to be excepted from control.

The argument seems to be that this was accomplished at a negligible cost and effort. The answer would seem to be that the defendant exercised good judgment in selecting his purchase of a property which showed that it was especially adapted to such change. Of course, if an owner, in order to escape control, attempted to convert what, on its face, was a small house or apartment, sufficient only for a single family or unit, by simply closing a few doors and creating impracticable or unusable accommodations, such would undoubtedly be recognized as a subterfuge. However, no such condition exists here and it is believed that what was done had the effect of removing the lower floor of this building, and the two units rented to separate tenants, from control under the statute.

There should be judgment for the defendant.

Proper decree should be presented.