**UNITED STATES v. PATTON ADJUSTMENTS, Inc. et al.**

**Civ. No. 1143.**

United States District Court
S. D. West Virginia, Charleston Division.

July 28, 1951.

Albert F. Shulman, Atty., Office of Housing Expediter, Cleveland, Ohio, for plaintiff.

Bowers & Meador, P. G. Meador, Charleston, W. Va., for defendants.

MOORE, Chief Judge.

This action, arising under the Housing and Rent Act of 1947, as amended, Sections 206(a) and 204(b), 50 U.S.C.A.Appendix, §§ 1894(b) and 1896(a), was tried by the Court without a jury. The facts are established by the pleadings, the exhibits, the agreed statement of facts, and the uncontroverted testimony of defendant Jack Patton.

Defendants are landlords of premises located at 2014 Preston Street, Charleston, West Virginia. The house was originally a single-family brick cottage, consisting of five or six rooms on the main floor, an unfinished attic, and a full basement with garage included, although the garage was used but little because of the grade of the driveway. After Congress enacted the Housing and Rent Act of 1947 defendant Jack Patton, president of Patton Adjustments, Inc., made inquiry at the local Rent Control Office as to what would be necessary to decontrol the property. Pursuant to the advice there received, defendants during the latter part of the year 1948 spent approximately $4,000 in converting what was formerly the basement into a two-room and bath apartment. A great part of this expenditure was for the new unit; however, certain improvements were made in the main or first floor unit. Built-in cabinets were installed in the kitchen, the premises were painted and redecorated, and the attic was wired and finished for use as an adjunct of the first floor living quarters. Also a space in front originally occupied by the garage driveway was filled in to become a part of the front lawn. The rear entrance through the basement was made the rear entrance of the additional unit, for which there was also constructed a main entrance at the side. The rear access for ingress and egress to and from the main floor unit is the rear steps, although it is still connected with the new unit by a stairway to the furnace room in the basement or lower floor.

Plaintiff alleges that defendants have demanded and received rent amounting to

$280 in excess of the maximum legal rent during the period beginning March 7, 1950, and ending November 7, 1950; which maximum legal rent, as shown in schedule "A" annexed to the complaint, was $50 per month, whereas the rate charged was $85 per month. Plaintiff seeks a preliminary and final injunction to restrain future violations, and a refund on behalf of the tenant for the excess rent received. It also asks for judgment in favor of the United States for twice the amount of the overcharges, or $560.

The principal contention of defendants is that the original first floor unit is exempt from the provisions of the Housing and Rent Act of 1947 by virtue of a conversion thereof after February 1, 1947, the effective date of the Housing and Rent Act of 1947, but before April 1, 1949, the effective date of the Housing and Rent Act of 1949. Plaintiff admits that the basement unit was never subject to control and it is not in controversy.

Sec. 202(c) (3) of the Controlled Housing and Rent Act of 1947, Public Law 464, 80th Congress, Second Session, 50 U.S.C.A. Appendix, § 1892(c) (3) hereinafter referred to as the Act, provides in part:

"(c) The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include * * *

"(3) any housing accommodations (A) the construction of which was completed on or after February 1, 1947, * * * or *which are additional housing accommodations created by conversion on or after February 1, 1947* * * *" (Italics supplied.)

Under authority of Sec. 204(d) of the Act, 50 U.S.C.A.Appendix, § 1894(d), the rent regulation issued July 1, 1947, reads in part as follows:

" * * * 'conversion' means (1) a change in structure from a non-housing to a housing use, or (2) a structural change in a residential unit or units involving substantial alterations or remodeling and resulting in the creation of additional housing accommodations." 24 C.F.R. 1949 Cum. Supp. 825, Appendix (V) (2) (Decontrol of Certain Classes of Housing Accommodations).

It is clear that the general improvements made, i. e., installing built-in cabinets, painting and redecorating, wiring and finishing the attic (principally for the purpose of storage), and filling in the front lawn were all insufficient to bring the first floor unit within the scope of the exemption provided for in the Act. The purpose of the Act is to encourage and stimulate the construction of new units of housing, to the end that inflationary pressures generated by a shortage of available housing units during an abnormal post-war period will be gradually released by the creation of new housing units to the extent that the law of supply and demand will one day supplant the present statutory controls. Manifestly, the mere improvement of existing housing accommodations adds nothing to the number of units available, and does not further the purpose of the Act. Woods v. MacNeil Bros. Co., D.C.Mass.1948, 80 F.Supp. 920.

It cannot be said that by virtue of the creation of the new basement unit, admittedly exempted by the Act, the first floor unit thereby became decontrolled. The significant phrase "created by conversion" which appears in the portion of the Act set out above bears directly on the problem presented here. It is apparent that, as regards the first floor unit, nothing was created. In substance and essence it remained what it was before. There were no substantial alterations or remodeling. The only change, with the exception of the improvements discussed above, was that formerly the tenant had the use of the garage and basement space; after the basement unit was created, he did not have. A mere diminution of the previously existing physical facilities is insufficient to bring the structure within the exemption granted by the Act. It would be out of harmony with the Congressional purpose to exempt from control those units previously existing merely because of their proximity to or co-existence with a decontrolled unit in the converted structure. There is nothing talismanic in the mere physical relationship. Woods for and on Behalf of United States v. Malas, D.C.W.D.Wis.1948, 81 F. Supp. 485.

Defendants urge United States v. Beatty, D.C.S.D.Iowa 1949, 88 F.Supp. 791; Flynn v. Woods, 8 Cir., 1950, 181 F.2d 867, and Woods v. Baker, D.C.W.D.La.1949, 84 F. Supp. 339, in support of the proposition that the division of an existing housing structure into two or more separate housing units is sufficient to establish exemption of the two or more units so formed. An examination of the facts in these cases shows that more is required than the physical division alone.

In United States v. Beatty the original living room and dining room were separated in two parts, a permanent brick wall was cut through, and a new doorway was built between the former living room and bedroom. Also a permanent offset wall was erected for the creation of a small kitchenette in the west front.

In Flynn v. Woods "the conversion was accomplished by tearing out a door and frame in residential property and replacing them with a solid permanent wall, and by the construction of a permanent partition wall with entrance door and frame to replace what had been an open archway, with the addition of the plumbing work necessary to serve two separate housing accommodations where one had existed before." See 181 F.2d at page 869.

In Woods v. Baker the alterations and modifications were less substantial, but their character was not unlike those mentioned in the Beatty and Flynn cases.

The nature of the alterations in each of these cases was such that two distinct and separate units were "created by conversion," for the reason that one could not point to either unit and say that it was the original, because in substance and essence it did not previously exist. The policy of the Act is to decontrol only that one or more of multiple units which is actually created, since only the housing units so created are added to the total number available. In the cases cited by defendant it would be difficult if not impossible to denominate either unit by the term "original," so as to leave it controlled while the other unit became exempt. This difficulty is not encountered in the case before me, for no uncertainty exists as to which is the original unit. With the exception of the general improvements made and the first floor tenant's virtual exclusion from the rights he formerly enjoyed in the basement, the first floor unit to all practical intents and purposes remained the same.

It is immaterial that the interpretation or rule, Vol. 6, O.H.E. Manual, Sec. 1(b) (2) (VI) (b)–1, promulgated by the general counsel for the Housing Expediter under the authority of the Housing and Rent Act of 1949 may or may not be applicable to determine what was a conversion under the 1947 Act. I deem it unnecessary to resort to the interpretation under the 1949 Act in view of the foregoing discussion. The conclusion reached appertains only to the 1947 Act, which defendants admit is applicable to determine whether or not the premises in question became decontrolled by a conversion.

The conclusion is that the first floor unit remained a controlled housing accommodation, and that defendants have collected from the tenant overcharges amounting to $280.

■ Defendants urge the point that they acted in good faith after being advised what to do by the local rent office. The uncontroverted testimony of defendant Jack Patton sustains this position. While the facts that defendants relied on unofficial interpretations and acted in innocence and good faith are not enough to defeat plaintiff's action, United Furniture Corp. v. Fleming, 4 Cir., 1947, 159 F.2d 321; Woods v. Macken, 4 Cir., 1949, 178 F.2d 510, this showing nevertheless is antithetical to a wilful violation upon which the penalty of treble damages is exacted. Sec. 205 of the Act, as amended, 50 U.S.C.A.Appendix, § 1895. Accordingly, plaintiff is entitled to recover only the amount of the overcharge for and on behalf of the tenant.

■ I am of opinion that the evidence has not established any likelihood of future violations by defendants of the Housing and Rent Act. Therefore, the application of the United States for a preliminary and final injunction is denied.

An appropriate order may be entered granting plaintiff's demand for restitution to the tenant in the amount of the overcharge, i. e. $280, but denying plaintiff any additional relief.