MITCHELL, APPELLEE, v. McDAVID, APPELLANT.

(No. 7675—Decided February 9, 1953.)

*Messrs. Becker, Loeb & Becker,* for appellee.
*Messrs. Halaby & Haughey,* for appellant.

MATTHEWS, P. J. This is an appeal on questions of law from a judgment for the amount of an alleged overpayment of rent and an attorney's fee under the Housing and Rent Act. The action was instituted in the Municipal Court of Cincinnati, which rendered judgment for the plaintiff for $125, found by that

court to be in excess of the allowable maximum, and $50 as an attorney's fee. The plaintiff waived all claim beyond that allowed by the court.

On appeal, the Common Pleas court affirmed the judgment. The appeal to this court is from that affirmance.

The record shows that the defendant has owned the residential real estate known as 1779 Sycamore street, Cincinnati, Ohio, since February 1, 1947. How long he had owned the property prior to that date does not appear. It does appear that as early as 1942, it was subject to the Housing and Rent Act, and that it had been registered and a maximum rent established for it as a single housing unit consisting of three rooms and bath on the first floor, two bedrooms on the second floor, and an attic which was not used or fit for use for human habitation.

In the summer of 1947, at a cost of $1,080, the defendant converted this single housing unit into two units by making a separate housing unit out of the second floor and attic. He did this by remodeling one room on the second floor into a kitchen and adding a bathroom, and by remodeling and refinishing the attic so as to constitute two bedrooms. The record leaves no doubt that the changes made were substantial, resulting in additional housing accommodations, so that upon completion there were two separate and distinct housing units where only one had been, and the housing accommodations were substantially doubled.

Before the work on the second floor and attic had been completed, the defendant rented them for $25 per month. After their completion, he rented them to the plaintiff at a rental of $37.50 per month.

In September 1947, the defendant filed with the area rent office two documents relating to this housing unit, one, a registration, and the other, a decontrol report.

In the registration he disclosed that he had rented the unit for $25 per month and in the decontrol report he showed that it was a newly constructed unit completed on and after February 1, 1947. On each of these documents was stamped the statement that on the basis of the information submitted the unit was decontrolled by the Housing and Rent Act of 1947, and this statement was signed by the area rent director.

After the plaintiff had occupied the unit from October 4, 1950, to August 1951, and had learned on inquiry at the area rent office that ''the only 4-room registration is for 'rear of court 2nd & 3rd floor' $25 month including water'' he instituted this action to recover treble the excess of the $25 per month he had paid and attorney's fee.

It should be said that there is no evidence that the area rent office at any time fixed a maximum rent for this housing unit. In fact the notation stamped on the registration document as well as the decontrol report indicates that the unit was not subject to control. It is true that the defendant recited in the registration filed by him that the maximum rent was $25 per month, but this did not constitute action by the area rent office; nor did it bind the defendant if the property was in reality decontrolled under the law.

As we see it, the question is whether this housing unit was subject to control under the Housing and Rent Act, and, if so, whether that control had been exercised by the fixing of a maximum rent for the new unit that was created in 1947.

As already mentioned, the area rent office at no time fixed a maximum rent or any rent for this unit. The only action stipulating rent was taken by the defendant on the assumption that his ownership gave him that right, and according to the testimony he fixed $25 per month for the property while it was being re-

modeled and after the remodeling was completed, he fixed $37.50 as the rent, which amount the plaintiff agreed to pay.

The defendant's assumption that his proprietorship included the power to dictate rental terms and to vary the same from time to time is, of course, based on the general law of private property. That power is unrestricted except so far as it has been regulated by the law-making power to promote the public health, morals, safety, general prosperity, or general welfare. The only law to which we have been referred in any way applicable is the Housing and Rent Acts passed by the Congress of the United States, which include provisions extending the Emergency Price Control Act of 1942. See Section 1891 *et seq.*, Title 50, Appendix, U. S. Code.

It is true that, by the Emergency Price Control Act of 1942, provision was made for regulation of rents in many areas of the United States, and agencies were created to administer the law. However, apparently it had been found that the rental restrictions had discouraged construction of new housing units. At any rate, Congress in extending the controls as aforesaid saw fit to relax the controls in certain respects. It did this by express exclusion of certain types of housing accommodations. These exclusions are found in Section 1892.

By the only part of that section which is pertinent here, it is provided:

"The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include * * * (3) any housing accommodations (A) the construction of which was completed on or after February 1, 1947, or which are housing accommodations created by a change from a nonhousing to a housing use on or after February 1, 1947, or which are additional housing accommodations

created by conversion on or after February 1, 1947."

By later provision in Section 1892, if the conversion took place after the effective date of the Housing and Rent Act of 1949, the property was to continue to be controlled unless the housing expediter issued an order decontrolling it, which, however, he was obliged to issue if he found that the conversion resulted in additional self-contained family units. No such order of decontrol was required for conversions between February 1, 1947, and 1949.

A reading of these provisions is sufficient to disclose the purpose of Congress to encourage new construction by freeing property from the restrictions of rent control so that the property owner could obtain a fair return upon his new investment and the public would obtain the advantage of additional housing accommodations.

It also seems clear that this record presents a situation falling within the exception, that this property is not "controlled housing accommodations" within the meaning of the price control act, and that neither the housing expediter nor the area rent office had fixed, or had jurisdiction to fix, a maximum rent for this housing unit.

While this section is so clear that it does not require interpretation, we mention that it has been applied in several cases, including *Graylyn Bainbridge Corp.* v. *Woods, Housing Expediter,* 173 F. (2d), 790, 10 A. L. R. (2d), 242; *Prince* v. *Davis,* 195 Misc., 901, 87 N. Y. Supp. (2d), 600; *Comstock* v. *Mahon,* 76 N. Y. Supp. (2d), 642; *Woods, Housing Expediter,* v. *Baker,* 84 F. Supp., 339; *Flynn* v. *Woods,* 181 F. (2d), 867.; *United States* v. *Beatty,* 88 F. Supp., 791.

The cases involving Section 1892 which have reached the United States courts have resulted from the efforts of the housing expediter to exercise power over property that had been improved after February 1,

1947. The question litigated was whether the change made by the owner after February 1, 1947, was substantial and resulted in additional housing accommodations. If such change had taken place it was conceded that the housing expeditor had no jurisdiction. In some cases, it was held that he had power to investigate to determine whether a substantial change and additional housing accommodations had been effected. The ultimate question, however, is judicial.

In the case at bar, there can be no question that a substantial transformation of this property took place, and that additional housing accommodations were created.

For these reasons, the judgment is reversed, and final judgment is entered for defendant.

*Judgment reversed.*

MATTHEWS, P. J., ROSS and HILDEBRANT, JJ., concur.